# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00867-CV

**Sonya Thorn Lopez, Appellant**

**v.**

**Texas State University, Sherri H. Benn, and Stella Silva, Appellees**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
## NO. 10-0901, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## O P I N I O N

Sonya Thorn Lopez sued Texas State University ("TSU"), alleging race discrimination and retaliation in violation of the Texas Commission on Human Rights Act ("TCHRA"). *See* Tex. Lab. Code Ann. §§ 21.051, .055 (West 2006).[1] TSU filed a plea to the jurisdiction, asserting that Lopez failed to exhaust her administrative remedies as to her retaliation and race-discrimination claims because she checked only the boxes for national-origin and sex discrimination on the charge of discrimination she submitted to the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission's Civil Rights Division ("TWC").

---

[1] Lopez also asserted claims for intentional infliction of emotional distress and defamation against her former supervisors, Dr. Sherri H. Benn and Dr. Stella Silva. The trial court granted Benn and Silva's plea to the jurisdiction on these claims, and Lopez does not, in this appeal, challenge the trial court's ruling as to those claims. Therefore, any error in the trial court's judgment as to those claims is waived. *See Secure Comm, Inc. v. Anderson*, 31 S.W.3d 428, 430-31 (Tex. App.—Austin 2000, no pet.) (holding that appellant waives right to complain of ruling to which no error was assigned).

The trial court granted the plea to the jurisdiction and dismissed Lopez's claims with prejudice. On appeal, Lopez argues that she exhausted her administrative remedies because even though she did not check the retaliation and race-discrimination boxes on the administrative charge form, she did check those boxes on her EEOC intake questionnaire. In addition, she asserts that retaliation and race discrimination are factually related claims that could reasonably be expected to grow out of the administrative agency's investigation of her sex-discrimination and national-origin-discrimination charges. We affirm in part and reverse in part the trial court's judgment with respect to Lopez's retaliation claims, and we reverse the trial court's order dismissing Lopez's race-discrimination claim. We remand the cause to the trial court for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY[2]

Lopez was hired as a Grant Director for TSU on May 1, 2006. She was supervised by Dr. Sherri H. Benn (Assistant Vice President for Student Affairs and Director of Multicultural Student Affairs) and Dr. Stella Silva (Associate Director of Multicultural Student Affairs). Lopez contends that she consistently received satisfactory performance evaluations and merit raises and bonuses during her tenure at TSU but that the tide changed in September 2009 after Lopez discharged Benn's brother, Tony Johnson, at the end of a temporary term of employment. Lopez asserts that she had been forced to hire Johnson on a temporary basis even though he was unqualified for the position and, after expressing her concerns to human resources, was advised to terminate his employment at the end of the temporary term.

---

[2] The allegations recounted in this opinion are taken from Lopez's petition and the evidence submitted by both parties in connection with TSU's jurisdictional challenge.

2

Lopez asserts that, shortly after she discharged Johnson, Benn and Silva retracted a pay raise she had been awarded in March 2009 due to an alleged error. In addition to reducing Lopez's pay on a going-forward basis, they required her to repay some of the erroneously paid salary. In September 2009 Lopez filed a grievance with TSU concerning the decision to reduce her pay. Lopez contends that, after she filed the grievance, Benn and Silva subjected her to harassing and discriminatory conduct. The outcome of the grievance proceeding is not disclosed in the record, but it is undisputed that Lopez was terminated from her position on October 19, 2009 for unspecified performance-based reasons.

On November 2, 2009, Lopez filled out an EEOC "Intake Questionnaire," in which she marked boxes indicating she had suffered discrimination based on sex and race and had been retaliated against for filing the reduction-of-pay grievance, complaining about Johnson's qualifications, and terminating his employment. At the same time, Lopez signed an administrative "Charge of Discrimination" on which only the "Sex" and "National Origin" discrimination boxes were checked. On the charge form, she described her allegations as follows:

> On October 19, 2009, I was wrongfully discharged from my position as Director of the Upward Bound program, allegedly due to negligence, gross misconduct and not performing my duties of Director. I have not received any prior warnings or counseling; during July 2009, I received a bonus, while during September 2009, I received a merit rate increase. During September 2009, it was my misfortune to have fired the brother of my department director.
>
> I believe I have been discriminated against because of my sex, female[,] and national origin, Hispanic, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Lopez noted on both the intake questionnaire and the charge of discrimination that she is Hispanic, but she did not provide Benn's, Johnson's, or Silva's races on either document.

In December 2009, at Lopez's request, the EEOC issued Lopez a right-to-sue letter, presumably without completing an investigation. Similarly, in March 2010 Lopez's attorney requested and received a right-to-sue letter from the TWC. Shortly thereafter, Lopez sued TSU for retaliation and race discrimination in violation of section 21 of the Texas Labor Code. *See* Tex. Lab. Code Ann. §§ 21.051, .055. With respect to the retaliation allegations, Lopez alleged that she was subjected to workplace harassment at the hands of TSU's officers, agents, servants, employees, and representatives and was fired in retaliation for engaging in the following protected activities: (1) firing Johnson; (2) filing a pay grievance with TSU; (3) participating in an investigation or proceeding regarding an unlawful discriminatory practice; (4) opposing discriminatory hiring practices; and (5) filing a charge of discrimination with the EEOC. Lopez further asserted that TSU discriminated against her because she is Hispanic. Lopez stated that Benn and Johnson are African American and Silva is Hispanic and that, after Lopez was fired, her position was allegedly filled by an African-American male.

TSU filed a plea to the jurisdiction, asserting among other things that Lopez failed to exhaust her administrative remedies with respect to her race-discrimination and retaliation claims because she did not select the race-discrimination and retaliation boxes on the EEOC charge form. As a result, TSU argued, the trial court lacked subject-matter jurisdiction over these claims. Lopez countered that she exhausted her administrative remedies because she checked the race-discrimination and retaliation boxes on the contemporaneously executed intake questionnaire

4

and because retaliation and race discrimination are factually related claims that could reasonably be expected to grow out of the administrative agency's investigation of her charge. The trial court granted the plea to the jurisdiction and dismissed Lopez's claims with prejudice. This appeal followed.

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Id.* A plea to the jurisdiction may challenge whether the plaintiff has alleged facts sufficient to affirmatively demonstrate jurisdiction or whether the jurisdictional facts alleged by the plaintiff actually exist. *See City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2009). In this case, TSU's plea to the jurisdiction challenged the existence of jurisdictional facts.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider the relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). The proper arbiter of the evidence and the corresponding standards of appellate review depend on whether the existence of jurisdictional facts implicates the merits of the plaintiff's case. *University of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.) Because the jurisdictional issue in the present case does not implicate the merits of Lopez's case, we will confine our discussion to the standards applicable in such cases.

5

When the jurisdictional facts are undisputed, the trial court rules on the plea to the jurisdiction as a matter of law, and on appeal the trial court's ruling is reviewed de novo. *Id*. If the facts are disputed, the court, not a jury, will make the necessary fact findings to resolve the jurisdictional issue. *Id*. On appeal, such findings—whether explicit or implicit—may be challenged for legal and factual sufficiency. *Id*. In the present case, the issue is whether Lopez properly exhausted her claims at the administrative level, and the evidence bearing on that issue is not disputed. Thus, whether Lopez exhausted her administrative remedies is a question of law that we review de novo.

**DISCUSSION**

The exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit for unlawful employment practices. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Texas Parks & Wildlife Dep't v. Dearing*, 150 S.W.3d 452, 459 (Tex. App.—Austin 2004, pet. denied). To exhaust administrative remedies under the TCHRA, a plaintiff must: (1) file a complaint with the TWC within 180 days of the alleged discriminatory act; (2) allow the TWC 180 days to dismiss or resolve the complaint; and (3) file suit in district court within 60 days of receiving a right-to-sue letter from the TWC and no later than two years after the complaint was filed. Tex. Lab. Code Ann. §§ 21.202, .208, .254, .256 (West 2006). The purposes underlying the administrative-complaint requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more effective adjudication and decision, and giving the administrative agency and the employer an opportunity to resolve the dispute. *See Pacheco*

6

*v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878-79 (5th Cir. 2003).

It is undisputed that Lopez's administrative charge was timely filed. Thus, the sole issue on appeal is whether the race-discrimination and retaliation claims asserted in her lawsuit fall within the scope of the administrative charge. It is well settled that the scope of Title VII and TCHRA litigation is limited to claims that were included in the administrative charge of discrimination and to factually related claims that could reasonably be expected to grow out of the agency's investigation of the claims stated in the charge.[3] *See, e.g., Pacheco*, 448 F.3d at 789; *Poindexter*, 306 S.W.3d at 810; *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Although it acknowledges the principle that EEOC complaints should be liberally construed, TSU argues that the liberal construction standard is designed solely to protect pro se litigants and thus is not applicable when a plaintiff is represented by counsel during the administrative process. We disagree. Although the concept of liberal construction of an EEOC charge is designed in part to protect lay people, *see, e.g., Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (rule protects unlettered lay persons making complaints without legal training or assistance of counsel), courts have not limited the rule as TSU suggests in order to make its application coextensive with its purpose. *See, e.g., Pacheco*, 448 F.3d at 788 ("[B]ecause most

---

[3] Because one of the TCHRA's purposes is to correlate state employment discrimination law with federal law, we may consider federal law in interpreting the TCHRA's provisions. *See* Tex. Lab. Code Ann. § 21.001 (West 2006); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000).

complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally."); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970) ("In the context of Title VII, no one . . . should be boxed out."). At most, courts have hinted that this standard should simply be applied even more liberally in the pro se context. *See, e.g.*, *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983) ("Given the liberal construction accorded EEOC charges, *especially those* by unlawyered complainants . . . ." (Emphasis added.)). In any event, Lopez was without counsel at the outset of the administrative process when the charge form was completed; as a result, the distinction TSU advances, even if otherwise valid, should not be applied in this case. We therefore conclude, as a general proposition, that Lopez has exhausted those claims stated in her charge as well as any factually related claims that could reasonably be expected to grow out of the administrative agency's investigation. The applicable standard is not the scope of an actual investigation but what would be objectively reasonable for the EEOC to investigate. *Park v. Howard Univ.*, 71 F.3d 904, 907 n.1 (D.C. Cir. 1995); *see also Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 & n.9 (5th Cir. 1994) (observing that actual scope of investigation does not determine exhaustion but can create inference that claim was actually presented).

## Race-Discrimination Claims

In her charge form, Lopez checked only the sex and national-origin discrimination boxes and referred to her national origin as "Hispanic"; she did not identify a particular country of origin. Because Lopez did not check the "race"-discrimination box, TSU contends that the race-discrimination claim asserted in her lawsuit exceeds the scope of the charge. Although we agree with TSU that race and national origin are distinct concepts, we conclude that Lopez exhausted

8

her race-discrimination claim because that claim could reasonably be expected to grow out of the administrative agency's investigation of her claim that TSU discriminated against her because she is Hispanic.

The Fifth Circuit has made it clear that which boxes were checked on the charge form is not dispositive as to the scope and category of discrimination asserted in the complaint: "[T]he crucial element of a charge of discrimination is the factual statement contained therein. . . . The selection of the type of discrimination alleged, i.e., the selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged." *Sanchez*, 431 F.2d at 462. In this case, Lopez stated in the narrative portion of her charge that she believes she was discriminated against because she is Hispanic. This is the salient substantive fact, not how she labeled her claim. This is especially true given that courts have recognized that the line between race and national-origin discrimination is difficult to draw and, moreover, a particular national origin can often be reasonably understood to indicate a particular race or color. *See Salas v. Wisconsin Dep't of Corr.*, 493 F.2d 913, 923 (7th Cir. 2007) (noting uncertainty about what constitutes race versus national-origin discrimination under Title VII); *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003) ("[B]ecause racial categories may overlap significantly with nationality or ethnicity, 'the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible' or at least sufficiently blurred so that courts may infer that both types of discrimination would fall within the reasonable scope of the ensuing EEOC investigation for exhaustion purposes." (Citations omitted.)); *Torres v. City of Chicago*, No. 99 C 6622, 2000 WL 549588, at *2 (N.D. Ill. May 1, 2000) (recognizing that common use of

9

term "Hispanic" has "blurred the line between race and national origin discrimination"); *see also Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J., concurring) (stating that race discrimination and national-origin discrimination are often "identical as a factual matter [where] one was born in the nation whose primary stock is one's own ethnic group"). Indeed, the term "Hispanic" does not literally designate either race or national origin and is instead commonly understood as implying both. *Torres*, 2000 WL 549588, at *2; *see also Magana v. Tarrant/Dallas Printing, Inc.*, No. 98-11054, 1999 WL 706122, at *1 (5th Cir. Aug. 19, 1999) (concluding that claim of demotion based on Mexican-American national origin embodied both race and national-origin discrimination claims); *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 459-60 (S.D.N.Y. 1998) ("Whereas the term 'black,' or even 'Asian,' does not trigger the concept of national origin or an affiliation to a particular country, the term 'Hispanic' may trigger the concept of race. Thus, . . . the allegations . . . would reasonably cause the EEOC to investigate discrimination based both on national origin and race . . . ."). Given the dual understanding and implication of the term "Hispanic," we believe that Lopez's claim that she was discriminated against because she is Hispanic would reasonably give rise to an administrative investigation of discrimination based on both national origin and race even though Lopez checked only the box labeled "national origin" on the EEOC charge. Therefore, we conclude that Lopez exhausted her administrative remedies as to her race-discrimination claim.

*Retaliation Claims*

Lopez claims that TSU retaliated against her for engaging in five protected activities: (1) firing Johnson (an African American); (2) filing a pay grievance with TSU; (3) participating in

10

an investigation regarding an unlawful discriminatory practice; (4) opposing appellee's discriminatory hiring practices; and (5) filing a charge with the EEOC.[4] However, she did not specifically allege retaliation on the charge form—she neither checked the "retaliation" box nor used the word "retaliation" in her narrative statement of facts. Moreover, none of the alleged protected activities were even referenced in the charge of discrimination except Lopez's decision to terminate Johnson's employment, about which she stated that it was her "misfortune to have fired [her supervisor's] brother" shortly before her employment was terminated.

As explained previously, the fact that Lopez did not check the "retaliation" box on the charge form is not dispositive; what matters most are the allegations of fact contained therein. *See Sanchez*, 431 F.2d at 462-64. Although Lopez's factual statement referred only obliquely to retaliatory conduct by TSU's agents based on her decision to terminate Johnson's employment, we conclude that this allegation would reasonably give rise to an administrative investigation of retaliation on that basis. We therefore hold that Lopez exhausted her administrative remedies as to her allegation that TSU retaliated against her for firing Johnson.

---

[4] To state a cognizable claim of retaliation, Lopez must have engaged in one or more of the following protected activities under the TCHRA: (1) opposed a discriminatory practice; (2) made or filed a charge; (3) made or filed a complaint; or (4) testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. Tex. Labor Code Ann. § 21.055 (West 2006). Because all retaliation claims must fall within the scope of this statutory requirement, we construe Lopez's broadly stated claims of retaliation based on participation in an investigation regarding an unlawful discriminatory practice and opposition to discriminatory hiring practices as referencing some action or actions distinct from her retaliation claims based on firing Johnson, filing a pay grievance, and filing an EEOC charge. Accordingly, we treat them as distinct claims for purposes of our analysis.

The same cannot be said of the other alleged claims of retaliation, however, which are not mentioned in the charge and are not factually related to any of the claims stated in the charge. Tacitly acknowledging these infirmities, Lopez contends that we should look beyond the four corners of the charge to the intake questionnaire for further amplification of her claims. The intake questionnaire was executed contemporaneously with the charge of discrimination, but Lopez does not contend that the questionnaire independently satisfies the requisites of a charge of discrimination. *See* Tex. Lab. Code Ann. § 21.201 (West 2006) (among other requirements, charge must be made under oath and served on respondent employer within 10 days of filing). On the questionnaire, Lopez selected boxes indicating the assertion of claims for race and sex discrimination as well as retaliation and provided a statement of facts complaining that discrimination and harassment occurred following her complaints about Johnson's qualifications, her termination of Johnson's employment, and her filing of a pay grievance. Lopez contends that the EEOC intake officer prepared the actual charge, which she then signed.

Under the present legal landscape, it is unclear whether and to what extent we may consider supplemental materials that are not attached to the administrative charge form in determining the scope of the charge. In the federal courts, two approaches have apparently emerged. Under the first approach, courts have seemingly considered intake questionnaires as a matter of course. *See, e.g.*, *Clark*, 18 F.3d at 1279-80 (considering both EEOC complaint and supporting documentation, including intake questionnaire, in determining whether allegations could reasonably be expected to grow from agency's investigation); *Silva v. Chertoff*, 512 F. Supp. 2d 792, 812 (W.D. Tex. 2007) (stating that "[c]ourts examine *all the information presented to the agency* to determine

what allegations would reasonably be expected to grow from the agency's investigation" (Emphasis added.)). Under the second approach, courts consider intake questionnaires only if (1) the facts set out in the questionnaire are a reasonable consequence of a claim set forth in the EEOC charge, and (2) the employer had actual knowledge of the contents of the questionnaire during the course of the EEOC investigation. *Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 773 (S.D. Tex. 2009); *Hayes v. MBNA Tech.*, No. Civ. A. 3:03-CV1766-D, 2004 WL 1283965, at *6 (N.D. Tex. June 9, 2004) (setting forth standard for determining when supplemental documents may be considered and stating that *Clark* does not require supplemental documents to be considered in all circumstances); *see also McCray v. DPC Indus.*, 942 F. Supp. 288, 295 (E.D. Tex. 1996) (declining to consider claims asserted in intake questionnaire because no evidence employer had knowledge of its contents). We believe the second approach is more in keeping with the requirement that claims asserted in litigation be reasonably related to claims stated in the charge and with the underlying purpose of the charge requirement to put employers on notice of the existence and nature of the charges against them. *See Martin v. Tyson Foods, Inc.*, No. H-10-2047, 2011 WL 1103657, at *3 (S.D. Tex. Mar. 23, 2011) (citing *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874 (5th Cir. 2003), and *EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984)).

The first approach is arguably over-inclusive in that it effectively treats the intake questionnaire as an independent charge instead of using it merely to *supplement* claims stated in the charge or reasonably related claims. Although the United States Supreme Court has held that intake questionnaires can independently constitute a charge for purposes of exhausting claims under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2006), its holding was

13

limited to situations in which the questionnaire (1) contained the essential elements of a charge, and (2) should be construed as a request by the employee for the agency to take the necessary action to vindicate statutory rights. *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 404 (2008). Unlike the ADEA regulations at issue in *Holowecki*, however, the TCHRA specifically requires that an administrative charge be sworn. *See* Tex. Lab. Code Ann. § 21.201(b). To consider unsworn questionnaires as a matter of course in determining whether a claim could reasonably be expected to grow out of the administrative agency's investigation would require us to ignore this statutory requirement. *See, e.g.*, *Ojedis v. JetBlue Airways Corp.*, No. A-08-CA-127 LY, 2008 WL 961884, at *5 (W.D. Tex. Apr. 9, 2008) (declining to extend *Holowecki* to actions arising under Texas Labor Code).

The second approach avoids the problem of the first approach to the extent it requires that the facts set out in the intake questionnaire be a reasonable consequence of a claim set forth in the charge. In other words, the questionnaire is truly *supplemental* to claims already falling within the liberal construction standard applicable to charges of discrimination. Moreover, the approach goes further by requiring that the employer have possessed actual knowledge of the contents of the questionnaire, which is one of the core functions served by the charge requirement in the first place. *See Harris v. Honda*, 213 Fed. App'x. 258, 261-62, 2006 WL 3627671, at **3 (5th Cir. Dec. 12, 2006) (distinguishing *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278 (5th Cir. 1994) and holding that employee did not exhaust claim raised only in intake questionnaire because unverified questionnaire did not constitute a charge under TCHRA and no evidence employer had notice that employee was pursuing discrimination claim on that basis); *see also Cooper*, 662 F. Supp. 2d at 773

14

(principal purposes of administrative charge requirement include "giving the employer some warning as to the conduct about which the employee is complaining"). In this case, we have already determined that the only retaliation claim fairly encompassed by the charge is the one based on Lopez's decision to terminate Johnson's employment. Thus, we decline to consider the intake questionnaire in determining whether Lopez exhausted her other retaliation claims, and we do not reach the issue of whether TSU had actual knowledge of the questionnaire's contents, had access to the questionnaire, or otherwise had notice that Lopez was pursuing a retaliation claim on those bases.

With regard to Lopez's claim that TSU retaliated against her because she filed a charge of discrimination with the EEOC, there is an exception to the exhaustion requirement when a retaliation claim grows out of a previously filed EEOC charge. In that circumstance, some courts have held that it is not necessary to file a second complaint with the EEOC. *See Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981); *Thomas*, 2 S.W.3d at 738.[5] However, the rationale underlying this exception is not applicable when the alleged retaliation occurred *before* the filing of the EEOC charge, *Eberle v. Gonzales*, 240 Fed. App'x 622, 628, 2007 WL 1455928, at *5 (5th Cir. May 18, 2007), *McCray*, 942 F. Supp. at 295, and in the present case, the only retaliatory acts Lopez alleges are workplace harassment and termination of her employment, both of which relate to conduct that preceded Lopez's filing of the charge of discrimination. Therefore, to the

_____

[5] Some courts have questioned the continued viability of this exception for Title VII litigation after the Supreme Court's decision in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). *See Sapp v. Potter*, 413 Fed. App'x 750, 2011 WL 661544, at *3 n.2 (5th Cir. Feb. 22, 2011). We need not consider the issue, however, because the exception does not apply to the facts presented by Lopez.

15

extent this exception is otherwise valid, which we need not decide, it does not apply to the claims Lopez has asserted here. Thus, we hold that Lopez failed to exhaust her administrative remedies with regard to this claim.

In sum, the trial court did not err in dismissing Lopez's claims that TSU retaliated against her for filing a pay grievance, participating in an investigation regarding an unlawful discriminatory practice, opposing allegedly discriminatory hiring practices, and filing an EEOC charge because Lopez failed to exhaust her administrative remedies as to these claims. However, we conclude that Lopez did exhaust her administrative remedies as to her claim that TSU retaliated against her for firing Johnson because an investigation of retaliation could reasonably have been expected to grow from the allegation in her charge that it was her "misfortune to have fired [her supervisor's] brother" shortly before she was terminated.

## CONCLUSION

We affirm the trial court's order dismissing Lopez's claims that TSU retaliated against her because she filed a pay grievance, participated in an investigation regarding an unlawful discriminatory practice, opposed TSU's discriminatory hiring practices, and filed an EEOC charge; Lopez failed to exhaust her administrative remedies as to these claims. However, we reverse the trial court's judgment as to Lopez's remaining retaliation and race-discrimination claims, which were exhausted at the administrative level. As to those claims, we remand the cause to the trial court for further proceedings.

16

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin
  Concurring and Dissenting Opinion by Justice Henson

Affirmed in Part; Reversed and Remanded in Part

Filed:   April 20, 2012