

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| UNIVERSITY OF TEXAS AT EL PASO, | § | No. 08-16-00268-CV |
| Appellant, | | |
| | § | Appeal from the |
| v. | | |
| | § | 448th District Court |
| JAMIE ISAAC, | | |
| | § | of El Paso County, Texas |
| Appellee. | | |
| | § | (TC# 2014DCV1723) |

# **O P I N I O N**

Jamie Isaac sued the University of Texas at El Paso ("UTEP") for unlawful discrimination by the university under the Texas Commission on Human Rights Act ("TCHRA").[1] Isaac alleged that UTEP discriminated against her based on her age by denying employment and in failing to respond or interview her for an available position for the fall semester of 2013. UTEP filed a plea to the jurisdiction asserting, *inter alia*, that Isaac had not exhausted her administrative remedies, and that the trial court therefore lacked jurisdiction. The trial court denied UTEP's plea to the jurisdiction. In this interlocutory appeal, UTEP appeals the trial court's decision. We reverse and render judgment dismissing Isaac's claim of employment discrimination.

---

[1] *See* TEX. LAB. CODE ANN. §§ 21.051, 21.056, and 21.101 (West 2015). Courts refer to Chapter 21 of the Labor code as the Texas Commission on Human Rights Act (TCHRA). *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 502 n.1 (Tex. 2012). We will follow the same practice throughout this opinion.

# I. BACKGROUND

Jamie Isaac was employed by the University of Texas at El Paso (UTEP) as a full-time Developmental Math lecturer from 1997 until her retirement in 2001. From 2001 to 2011, Isaac then taught math as a part-time lecturer with the regular math department of the university. In the spring or summer of 2013, Isaac learned from her friend Anna Moschopoulos of openings for the fall 2013 semester back in the Developmental Math Department (the "Department"). Moschopoulos, also a math lecturer, informed Isaac there would be three vacancies in the fall of 2013 since she (Moschopoulos) would not be rehired and two other lecturers would also not be returning. The Department had not publicly announced any openings or otherwise communicated to Isaac any available positions.

Isaac telephoned Cynthia Denise Lujan, the director of the Department, sometime in the summer of 2013 to inquire about available positions. Lujan testified at a deposition that she had not posted job openings for the Department but she nevertheless informed Isaac that she was welcome to submit her resume for the Department's file. Isaac contradicted Lujan, stating in an affidavit that she submitted her resume in response to Lujan's direct instructions.[2] Nonetheless, Lujan claimed she never saw or received Isaac's resume for a position with the Department. Isaac, then 65 years of age, claimed she received no response to her resume.

During her deposition, Isaac stated that she learned that the Department hired other persons whom she described as younger and less qualified than herself. On November 27, 2012, Lujan recommended Rosa Hernandez, then approximately 55 years of age, for the "Developmental Math Faculty Position" to begin working at the Department in January 2013. Additionally, Lujan hired

---

[2] Isaac's affidavit filed in response to UTEP's plea to the jurisdiction states that she hand-delivered her resume to Lujan's secretary.

Saul Soto, then in his late thirties, in June 2013 to begin working as a full-time lecturer in September 2013. Then, in May 2014, Lujan hired Haydee Montes Saucedo, a woman in her thirties, to begin working as a full-time lecturer at the Department in January 2015.

*The Intake Questionnaire*

Believing that UTEP had engaged in a discriminatory hiring practice, Isaac contacted the Equal Employment Opportunity Commission ("EEOC") and completed an intake questionnaire which she signed and dated on November 30, 2013. In the questionnaire, Isaac identified UTEP as the employer she believed had committed the discriminatory act. Isaac wrote that she believed UTEP had discriminated against her based on her age when UTEP did not interview or hire her for a lecturer position. Isaac further explained that UTEP alternatively hired two younger individuals who were less qualified than her, and wrote in that she had been informed that during a faculty meeting, it "was stated: 'we need young blood.'" She identified Lujan as the immediate supervisor, stated that she applied for the "math lecturer" position in June of 2013, to begin on August 26, 2013, and marked the "Age" box for the basis of her claim of employment discrimination. Immediately before the questionnaire's signature block, the following text appeared:

> Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer . . . about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.
>
> BOX 1

3

I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

BOX 2

χ  I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer . . . that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

Isaac marked Box 2, signed, and dated the form November 30, 2013. The questionnaire itself did not contain verification language nor require Isaac to attest under oath or penalty of perjury.

The EEOC case log reflects that the EEOC subsequently contacted Isaac on several occasions, requesting her to provide the EEOC with additional information. On March 7, 2014, an EEOC investigator interviewed Isaac by phone and entered an abbreviated note stating that Isaac would call back with additional information relevant to her case no later than March 14. The next entry, dated March 19, 2014, reflects that Isaac called on March 14 and left a voicemail. A member of the EEOC staff called her back that day and left a voicemail asking Isaac to call back to continue with the processing of her claim. EEOC staff left a second voicemail on March 26 requesting a return call to finish processing her claim. EEOC notes reflect that Isaac was also informed in the message that her case would be submitted on March 28 if she did not call back before then.

On April 10, the EEOC closed Isaac's claim based on its determination that it was unable to conclude that the information obtained established any unlawful, discriminatory violations. The notice also provided that the EEOC did not certify that the university was complying with relevant statutes. The "Dismissal and Notice of Rights" letter sent to Isaac, dated April 10, 2014, stated:

4

This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)[.]

On the same day, the EEOC sent two additional notices. First, as to UTEP, the EEOC sent a form titled, "Notice of Charge of Discrimination," in which it provided notice that Isaac had filed a "charge of employment discrimination," in which she alleged age discrimination. Second, to the Texas Workforce Commission Civil Rights Division, the EEOC sent EEOC Form 212-A (3/98) informing the commission that it had received a charge of employment discrimination from Isaac against UTEP and it would initially investigate the charge pursuant to a worksharing agreement.

On May 29, 2014, Isaac filed suit under the TCHRA, claiming UTEP had discriminated against her based on her age when she was not called for an interview in August of 2013. UTEP filed a plea to the jurisdiction and motion for traditional and no-evidence summary judgment.[3] The trial court denied UTEP's plea and motion. This interlocutory appeal followed.[4]

## II.  DISCUSSION

UTEP raises three issues on appeal:  first, whether the trial court erred in denying UTEP's plea to the jurisdiction because Isaac failed to exhaust her administrative remedies by failing to satisfy the oath obligation under the TCHRA; second, whether the trial court erred in denying UTEP's motion for summary judgment since Isaac failed to establish every element of her prima

---

[3] UTEP filed a previous plea to the jurisdiction, however, only the second is at issue here.

[4] Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code allows an appeal from an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit." *Texas Dept. of Criminal Justice v. Simons,* 140 S.W.3d 338, 349 (Tex. 2004); TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2017). The reference to "plea to the jurisdiction," however, is not to a particular procedural vehicle but to the substance of the issue raised. *Simons,* 140 S.W.3d at 349.

5

facie case of age discrimination; and third, whether the trial court erred in denying UTEP's motion for summary judgment since UTEP presented legitimate, nondiscriminatory reasons for its employment decision and Isaac failed to show that UTEP's stated reasons were pretextual.

**Plea to the Jurisdiction and the TCHRA**

In UTEP's first issue, it argues that the trial court erred in not dismissing the case for lack of jurisdiction based on Isaac having filed an unsworn intake questionnaire with the EEOC, as opposed to a writing made under oath, as required by Section 21.201(b) of the TCHRA. UTEP contends that the filing of a sworn complaint is a statutory prerequisite to filing an age discrimination suit against a governmental employer. Without a sworn complaint, UTEP contends there is no waiver of immunity and the suit is jurisdictionally barred. Isaac agrees that the oath requirement is mandatory, but nonetheless argues her lack of filing a sworn complaint is not a jurisdictional defect. For the following reasons, we agree with UTEP.

*Standard of Review*

Whether a court has subject matter jurisdiction is a question of law reviewed *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002). When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226. If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id*. at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue must be resolved by the fact finder. *Id*. at 227–28. If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then

the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. at 228. Further, all reasonable inferences are indulged, and any doubts resolved, in favor of the nonmovant. *Id*. When the jurisdictional facts are undisputed, as they are in this case, we "make[] the jurisdictional determination as a matter of law based on those undisputed facts." *Lueck v. State*, 325 S.W.3d 752, 757 (Tex. App.—Austin 2010, pet. denied) (citing *Miranda*, 133 S.W.3d at 227–28).

### *TCHRA and Sovereign Immunity*

Isaac sued UTEP under the age discrimination provision of the TCHRA, which provides that failure to hire an individual of forty years of age or older because of the employee's age is an unlawful employment practice. TEX. LAB. CODE ANN. §§ 21.051, 21.101 (West 2015). The TCHRA has been described by the Texas Supreme Court as "a comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964 (Title VII), that provides the framework for employment discrimination claims in Texas." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 502-03 (Tex. 2012). The Texas Legislature enacted the TCHRA for a dual purpose: "'to address the specific evil of discrimination and retaliation in the workplace,' as well as to coordinate and conform with federal anti-discrimination and retaliation laws under Title VII." *Id*. at 504 (quoting *City of Waco v. Lopez*, 259 S.W.3d 147, 153-55 (Tex. 2008) (internal quotation omitted)). Although not exactly alike, "both the TCHRA and Title VII similarly define unlawful employment practice, and as part of each act's administrative process impose a strict 180-day statute of limitations for filing an employment discrimination complaint with the appropriate governmental agency, running from the date the alleged unlawful employment practice occurs." *Id*. at 504-05.

Based on the doctrine of sovereign immunity, governmental entities are generally immune from suit unless the Texas Legislature provides for a waiver of immunity. *See San Antonio Water*

7

*Sys. v. Nicholas*, 461 S.W.3d 131, 135 (Tex. 2015); *Miranda*, 133 S.W.3d at 224. The Legislature has waived immunity for claims properly brought under the TCHRA. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). But the waiver extends only to "those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Id.* By its terms, the TCHRA defines an "employer" to include state agencies, and that term in turn includes institutions of higher education such as UTEP. TEX. LAB. CODE ANN. §§ 21.051 (describing unlawful employment practices); 21.002(8)(D) (West 2015) (defining "employer" to include state agency), 21.002(14)(C) (West 2015) (defining "state agency" to include "an institution of higher education"); *Univ. of Texas at El Paso v. Esparza*, 510 S.W.3d 147, 153 (Tex. App.—El Paso 2016, no pet.) (stating that Texas Legislature has waived immunity for claims against universities, such as UTEP, which are brought under the TCHRA). After satisfying certain administrative requirements, a claimant may bring a civil action. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) (citing TEX. LAB. CODE ANN. § 21.254) (within sixty days after the date a notice of the right to file a civil action is received, "the complainant may bring a civil action against the respondent"). Accordingly, a plaintiff must state a claim for conduct that would violate the TCHRA and satisfy administrative requirements. *Id.* The failure to exhaust administrative remedies is a jurisdictional defect which deprives the courts of subject matter jurisdiction. *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 488 (Tex. 1991), *overruled in part on other grounds by In re United Servs. Auto Ass'n,* 307 S.W.3d 299, 310 (Tex. 2010); *City of Waco v. Lopez,* 259 S.W.3d 147, 149 (Tex. 2008); *El Paso County v. Vasquez*, 508 S.W.3d 626, 633 (Tex. App.—El Paso 2016, pet. denied).

In pursuing a claim, the TCHRA requires that the claimant file a sworn, written complaint

with the commission[5] within 180 days of the alleged discriminatory act.[6] *Schroeder*, 813 S.W.3d at 488; TEX. LAB. CODE ANN. §§ 21.201(a), 21.202(a) (West 2015). If the complaint suffers from technical defects or omissions, including the failure to verify the complaint, then the complaint may be amended to cure these defects. *Id.* § 21.201(e). An amended complaint relates back to the date of the complaint first received by the Commission. TEX. LAB. CODE ANN. § 21.201(f); *see also Hennigan v. I.P. Petroleum Co. Inc.,* 858 S.W.2d 371, 373 (Tex. 1993) (holding that "a verified complaint filed outside of the 180-day time limit relates back to, and satisfies any deficiencies in an unverified questionnaire filed within the 180-day limit, therefore satisfying the 180-day jurisdictional requirement of section [21.202(a)]"). "If a perfected complaint is not received by the commission within 180 days of the alleged unlawful employment practice, the commission shall notify the respondent that a complaint has been filed and that the process of perfecting the complaint is in progress." TEX. LAB. CODE ANN. § 21.201(g). After the complaint is perfected, the Commission has 180 days to investigate and attempt to resolve the complaint. *See id.* §§ 21.208 (West 2015), 21.253 (West 2015). If the Commission determines there is no reasonable cause to believe the employer engaged in the alleged unlawful employment practice, then the Commission issues a written determination, dismisses the complaint, and notifies the complainant of the dismissal. *Id.* § 21.205 (West 2015). The Commission may issue a notice that the complainant has the right to file a civil action. *Id.* § 21.252(c). The complainant then has sixty

---

[5] The reference to the "commission" in Chapter 21 of the Labor Code references the Texas Workforce Commission (the "TWC") even though previously referred to as the Commission on Human Rights. TEX. LAB. CODE ANN. § 21.0015 (West Supp. 2017); *Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 798 n.1 (Tex. 2010).

[6] A claimant may file a complaint with either the EEOC, the federal agency authorized to investigate charges of discrimination, or the TWC. *See Chatha*, 381 S.W.3d at 504 n.4; 42 U.S.C. § 2000e–5(e)(1); TEX. LAB. CODE ANN.§§ 21.201, .202; 40 TEX. ADMIN. CODE § 819.41(c). Charges that are filed by Texas employees with the EEOC are contemporaneously filed with the TWC. *See Chatha*, 381 S.W.3d at 504 n.4.

days to bring a civil action. *Id.* § 21.254.

Over time, the Texas Supreme Court has considered whether a failure to fully comply with statutory prerequisites to suit necessarily deprives a court of subject matter jurisdiction. In *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084, 1087 (1926), the court established that all statutory prerequisites to suit were jurisdictional. Decades later, however, the Supreme Court abrogated this rule in the context of private litigants in *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex. 2000) ("[T]he modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction.") (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. e, at 113 (1982)). *Dubai*'s holding was later extended to governmental entities in *Univ of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser,* 140 S.W.3d 351, 359 (Tex. 2004). In *Loutzenhiser*, the Supreme Court held that the pre-suit notice provision of the Texas Tort Claims Act was not a condition of the statute's waiver of immunity, reasoning that while the statute required pre-suit notice, failure to provide it was not jurisdictional because no consequence was specified within the statute. *Id.* In direct response to *Loutzenhiser*, the Legislature then amended section 311.034 of the Government Code "to make notice requirements, and all other statutory prerequisites to suit, jurisdictional as to governmental entities." *Chatha*, 381 S.W.3d at 511; *see* TEX. GOV'T CODE ANN. § 311.034 (West 2013). At issue here is whether section 21.201 of the TCHRA, which obligates a claimant to file a complaint in writing and under oath with either the Texas Workforce Commission Civil Rights Division (TWC) or the Equal Employment Opportunity Commission (EEOC), is a statutory prerequisite as contemplated by section 311.034 of the Government Code. TEX. LAB. CODE ANN. § 21.201; TEX. GOV'T CODE ANN. § 311.034.

10

***Is the Oath Obligation a Statutory Prerequisite to Waive Sovereign Immunity?***

Here, Isaac concedes that the requirement to file a complaint under oath is a mandatory provision of the TCHRA; however, she argues that being a mandatory provision does not then follow that it is jurisdictional. Isaac asserts there is no express language in the TCHRA to indicate that the oath requirement is jurisdictional or that failure to comply would result in a claim dismissal. Because the TCHRA allows for a complaint to be amended to cure technical defects or omissions, including a failure to verify the complaint, Isaac asserts the Legislature appears to view the failure to verify the complaint not as a jurisdictional defect, but rather, as a technical defect or omission that may be cured. As a governmental entity, UTEP counters that all statutory prerequisites to suit are jurisdictional pursuant to Section 311.034 of the Government Code. We agree.

Section 311.034 of the Government Code expressly provides that all statutory prerequisites to suit are jurisdictional in suits against governmental entities. TEX. GOV'T CODE ANN. § 311.034. In *Chatha*, which involved a TCHRA claim brought against a state university, the Texas Supreme Court construed the term "statutory prerequisites." *Chatha*, 381 S.W.3d at 510. In *Chatha*, a university professor filed a complaint with the EEOC and the TWC alleging race and nationality-based pay discrimination under the TCHRA. *Id*. at 503. The University responded by filing a plea to the jurisdiction asserting the professor's complaint was not timely filed pursuant to the 180-day limitations provision of the statute. *Id*. at 504 (citing TEX. LAB. CODE ANN. § 21.202) (providing that a complaint under TCHRA must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred). The Supreme Court directly considered whether the 180-day filing deadline in the TCHRA is a statutory prerequisite to suit as contemplated under section 311.034 of the Government Code. *Id*. at 511.

11

In construing the term "statutory prerequisite," the Supreme Court observed that the term itself had three components. *Id*. at 511-12. First, to fall within the ambit of section 311.034, a prerequisite must be found in the relevant statutory language. *Id*. at 512. Second, the prerequisite must be a requirement. *Id*. And finally, the term "pre" indicates the requirement must be met before the lawsuit is filed. *Id*. *Chatha* concluded that the term "statutory prerequisite" referred to statutory provisions that are mandatory and must be accomplished prior to filing suit. *Id*.; *see also Zamora v. Tarrant County Hosp. Dist.*, 510 S.W.3d 584, 589 (Tex. App.—El Paso 2016, pet. denied) (following the *Chatha*-established, three-step test to determine whether a condition set by statute is a jurisdictional "prerequisite to suit").

*Chatha* observed that the Legislature's mandate is clear, "[i]n a statutory cause of action against a governmental entity, the failure to adhere to the statute's mandatory provisions that must be accomplished before filing suit is a jurisdictional bar to suit." *Chatha*,381 S.W.3d at 512. *Chatha* explained, it is the Legislature's function to determine what steps a litigant must take before the state's immunity is waived. *Id*. at 513 (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008)) ("[T]he Legislature . . . has consented to suits brought under the TCHRA, provided the procedures outlined in the statute have been met."). Recognizing that "section 311.034's scope is fairly sweeping," *Chatha* nonetheless concluded it was consistent with the purpose of sovereign immunity and within the Legislature's discretion to determine the procedures required before the State's immunity was waived. *Id*.

Turning to the issue here, UTEP contends that Isaac failed to follow statutory prerequisites of filing a complaint under oath. *See* TEX. LAB. CODE ANN. § 21.201. Section 21.201 provides that a person claiming to be aggrieved by an unlawful employment practice may file a complaint with the commission. *Id*. § 21.201(a). Pertinent to the complaint, section 21.201 requires that the

12

complaint must be in writing, "made under oath," state "that an unlawful employment practice has been committed," set forth the facts supporting the complaint, and state sufficient facts to identify the respondent. *Id*. § 21.201(b), (c). Applying *Chatha's* three-part test, the plain text of the statute providing a "complaint must be . . . made under oath" is expressed as a mandatory provision. TEX. LAB. CODE ANN. § 21.201(b); *see* TEX. GOV'T CODE ANN. § 311.016(3) (West 2013) ("'Must' creates or recognizes a condition precedent"); *see also Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("When used in a statute, the term 'must' creates or recognizes a condition precedent."). Moreover, as discussed in *Chatha*, the complaint must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred. *Id*. § 21.202; *Chatha*, 381 S.W.3d at 513. Accordingly, based on the plain text of the statute and court precedents, we conclude that the requirement of a complaint under oath is a mandatory provision that is a prerequisite of filing a suit under the TCHRA, and when applicable, this provision falls under the scope of section 311.034 of the Government Code. *See Chatha,* 381 S.W.3d at 512 ("statutory prerequisite" refers to statutory provisions that are mandatory and must be accomplished prior to filing suit); TEX. GOV'T CODE ANN. § 311.034. Failure to satisfy the obligation to file a complaint under oath deprives the trial court of jurisdiction in a suit against a governmental entity. *See Chatha*, 381 S.W.3d at 513-14 ("[T]he Legislature . . . has consented to suits brought under the TCHRA, provided the procedures outlined in the statute have been met."); TEX. GOV'T CODE ANN. § 311.034; s*ee generally* TEX. LAB. CODE ANN. § 21.201. Because Isaac failed to file her complaint with the EEOC in accordance with the requirements of section 21.201, we conclude that her suit against the University is jurisdictionally barred pursuant to section 311.034. *See Chatha*, 381 S.W.3d at 511 ("[section 311.034 as amended] evinces the Legislature's intent that all statutory prerequisites are now jurisdictional requirements as to governmental entities and are properly

13

asserted in a plea to the jurisdiction").

Although Isaac concedes that the oath requirement was mandatory, she argues here that the statutory language of section 21.201 does not expressly state that the requirement is jurisdictional. To support her proposition that the trial court did not err in denying the plea, Isaac relies heavily on *Reid v. SSB Holdings, Inc.*, 506 S.W.3d 140 (Tex. App.—Texarkana 2016, pet. denied). In *Reid,* the appellate court faced an almost identical issue to the one before us now; namely, the claimant submitted a pre-suit questionnaire not made under oath as required by section 21.201(b) of the Labor Code. *Reid*, 506 S.W.3d at 143–44. On appellate review, *Reid* determined the trial court erred in granting the respondent's plea to the jurisdiction based on an unverified questionnaire. *Id*. at 150. Important to note, however, the dispute in *Reid* involved a suit filed against a private employer. *Id*. at 141-42.

We find limited guidance in *Reid* since the claim was not made against a governmental entity; and thus, *Reid* contains no discussion of the doctrine of sovereign immunity or, more specifically, of the application of section 311.034 of the Government Code. Given the factual distinction—that UTEP is a governmental entity, and not a private employer—Isaac's reliance on *Reid* is misplaced and contrary to controlling precedent. While we recognize that section 21.201 of the TCHRA does not expressly contain jurisdictional language, nonetheless, the requirement of an oath is itself a statutory prerequisite. *See Chatha*, 381 S.W.3d at 512. On that question, even Isaac agrees the oath requirement is mandatory. As *Chatha* explained, the TCHRA is a statutory cause of action with no remedy at common law. *Id*. at 513. As interpreted by the Supreme Court, "the TCHRA clearly and unambiguously waives sovereign immunity, [but] it is a limited waiver of immunity." *Id*. (citing *Mission Consol. Indep. Sch. Dist*., 253 S.W.3d at 660). *Chatha* further explains, "a claimant can bring suit under the TCHRA against a governmental entity only after a

14

claimant strictly satisfies the procedural requirements outlined in the TCHRA." *Id*. at 513-14.

Isaac also advances the argument that the TCHRA was enacted to execute the policies of Title VII[7] and is modeled after federal law. *In re United Services Auto. Ass'n*, 307 S.W.3d at 308 ("The TCHRA was enacted to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964'") (citing TEX. LAB. CODE ANN. § 21.001(1)). In coordinating state and federal law, Isaac asserts we may look to federal cases interpreting federal statutes when interpreting analogous TCHRA statutes. While some federal courts have considered similar verification requirements for charges of discrimination (noting the differences between an unverified questionnaire[8] and a verified charge of discrimination[9]), the Texas Supreme Court explained in *Chatha* that "[the United States] Congress has not enacted a provision comparable to section 311.034." *Chatha*, 381 S.W.3d at 515. Thus, *Chatha* directs that when the claim is asserted against a governmental entity, "we do not look to federal case law for guidance, as it would provide none." *Id*.

While Isaac attempts to proffer her intake questionnaire as a satisfactory charge of discrimination, there is no dispute here that her questionnaire lacked an oath or verification. Texas courts have analyzed differences between an intake questionnaire and a charge of discrimination mostly to examine the nature and scope of the allegations. In *Lopez v. Texas State University*, a case that pre-dates *Chatha*, the court considered whether an intake questionnaire filed with the

---

[7] Title VII is codified at 42 U.S.C. §§ 2000e to 2000e–17.

[8] Under federal law, a charge filed with the EEOC, like a complaint filed with the commission, has an oath requirement. 42 U.S.C. § 2000e-5(b). Federal courts have held that the failure to verify a Title VII charge is not a jurisdictional bar to filing suit in suits between private litigants. *See Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982).

[9] The Fifth Circuit distinguished a prior case and held that employee did not exhaust the administrative remedies for a claim raised only in intake questionnaire because unverified questionnaire did not constitute a charge under TCHRA and there was no evidence employer had notice that employee was pursuing discrimination claim on that basis. *Harris v. Honda,* 213 Fed. Appx. 258, 261–62 (5th Cir. Dec.12, 2006).

EEOC could support a statutory cause of action for employment discrimination filed under the TCHRA. *Lopez v. Texas State Univ.*, 368 S.W.3d 695, 704 (Tex. App.—Austin 2012, pet. denied). In that case the claimant checked the race-discrimination and retaliation boxes on the EEOC intake form but not on the EEOC charge form. *Id*. at 700. *Lopez* noted that federal court decisions have fallen into two categories: (1) some consider intake questionnaires as a matter of course; (2) others consider intake questionnaires only if the facts set out in the questionnaire are a reasonable consequence of the claim set forth in the subsequently filed EEOC charge and the employer had actual knowledge of the contents of the questionnaire during the course of the EEOC investigation. *Id*. at 704.

*Lopez* recognized that the U.S. Supreme Court in *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 404, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008), allowed an intake questionnaire to constitute a charge for purposes of exhausting claims under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2006). However, *Lopez* found *Holowecki* distinguishable describing the holding as "limited to situations in which the questionnaire (1) contained the essential elements of a charge, and (2) should be construed as a request by the employee for the [EEOC] to take the necessary action to vindicate statutory rights." *Lopez*, 368 S.W.3d at 705. Factually, we note additionally that the questionnaire in *Holowecki* was timely supplemented with an affidavit and the U.S. Supreme Court construed both documents together. *Fed. Exp. Corp. v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 1151, 170 L.Ed.2d 10 (2008) ("although the form did not itself request agency action, the accompanying affidavit asked the EEOC to 'force [FedEx] to end [its] age discrimination plan.'"). Focusing on the oath requirement of the TCHRA, *Lopez* adopted the second line of reasoning stating, "[t]o consider unsworn questionnaires as a matter of course in determining whether a claim could reasonably be expected

16

to grow out of the administrative agency's investigation would require us to ignore this statutory requirement." *Lopez*, 368 S.W.3d at 705; *see also Harris County Hosp. Dist. v. Parker*, 484 S.W.3d 182, 194 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (adopting the same approach with regard to intake questionnaires filed with the EEOC); *but see Roccaforte v. Jefferson County*, 341 S.W.3d 919, 924 (Tex. 2011) (holding that a statute requiring post-suit notice to a county was not jurisdictional pursuant to section 311.034 since the requirement could only be satisfied after suit was filed).

Importantly, we note that Isaac did not amend her questionnaire or file an affidavit with the EEOC before the EEOC closed her case.[10] *See, e.g., Dallas County Southwestern Institute of Forensic Sciences & Medical Examiner Dept. v. Ray*, 400 S.W.3d 219, 222 (Tex. App.—Dallas 2013, pet. denied) ("[i]f the complaint suffers from technical defects or omissions, including a failure to verify the complaint, then the complaint may be amended to cure these defects"). In *Texas Dept. of Public Safety v. Alexander*, 300 S.W.3d 62 (Tex. App.—Austin 2009, pet. denied), sixteen plaintiffs were required to file their charges of discrimination no later than May 29, 2002. *Alexander*, 300 S.W.3d at 70. In response to a plea to the jurisdiction, one of the plaintiffs presented as evidence: (1) a copy of her intake questionnaire, signed by her and dated on May 21, 2002, and (2) an affidavit stating that she "filed a charge of discrimination" concerning the alleged discriminatory action on or before May 21, 2002. *Id.* at 75. The court held that this evidence was insufficient to show that the plaintiff filed her questionnaire before the 180-day deadline. *Id.* at

---

[10] While Isaac may have been able to amend her intake questionnaire with a verified amendment in order to cure her defective questionnaire, an amendment filed after the file has been administratively closed by the EEOC would be treated as a new charge. *See* TEX. LAB. CODE ANN. § 21.201(e), (f); *Texas Dep't of Aging & Disability Services v. Lagunas*, 546 S.W.3d 239, 245 n.3 (Tex. App.—El Paso 2017, no pet.). Our record is void of any amendment filed with the EEOC before the EEOC closed Isaac's file.

The court stated, "[T]here must be something else in the record to create a logical bridge between the completed intake questionnaire and the timely filing of that questionnaire." *Id*. Similarly, we also do not find the intake questionnaire sufficient because it was not initially verified, nor do we find "something else" in the record showing Isaac cured this deficiency.[11]

Isaac also argues that the EEOC has itself determined that an intake questionnaire may serve as an acceptable alternative to a formal charge. Isaac argues that other courts have concluded that an intake questionnaire that "sets the administrative machinery in motion" serves as a substitute for a verified charge and results in a plaintiff exhausting her administrative remedies, (citing *Conner v. Louisiana Dep't of Health and Hospitals*, 247 Fed. Appx. 480, 481 (5th Cir. 2007) and *Redford v. KTBS, LLC*, 135 F.Supp.3d 549, 557 (W.D. La. 2015)) for those propositions. These cases were filed under the federal Title VII claim process codified at 42 U.S.C. § 2000e–5, which does contain a verification requirement. *See* 42 U.S.C. § 2000e–5(b) ("[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires"). However, since the charges in those cases were neither subject to section 21.201(b) of the Texas Labor Code nor to section 311.034 of the Texas Government Code, we find *Conner* and *Redford* distinguishable.

Lastly, we agree with UTEP's contention that the pertinent issue before us is not whether an EEOC intake form or questionnaire may serve as a charge under the TCHRA generally. Instead, as UTEP points out, the critical issue here is whether a charge must be made under oath, or verified,

---

[11] Jurisdictions differ on if, and when, a plaintiff can and must amend her unverified complaint. *Compare Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994) (stating that a charge may not be amended with verification once the EEOC has closed its investigation and issued a right to sue letter) *with Buck v. Hampton Tp. School Dist*., 452 F.3d 256, 263 (3rd Cir. 2006) (the verification requirement is subject to waiver "when equity so requires"). Since no verified charge exists in the record, the issue of when a plaintiff must amend an unverified charge in a TCHRA claim is not before us here, and we decline to address it at this time.

to satisfy the statutory prerequisite set forth in section 21.201(b) of the Labor Code, and whether this requirement is jurisdictional under section 311.034 of the Government Code. By its terms, section 21.201 provides that a claimant may file a complaint with the commission (either the EEOC or the TWC), but the complaint must be in writing and made under oath. *See* TEX. LAB. CODE ANN. § 21.201(a), (b).

The record before us shows that the form utilized by Isaac was not made under oath nor timely amended. Because Isaac failed to file her complaint under oath within 180 days after the alleged unlawful employment practice occurred, we conclude that UTEP properly asserted a plea to the jurisdiction and the plea should have been granted. *See Chatha*, 381 S.W.3d at 513-14 ("a claimant can bring suit under the TCHRA against a governmental entity only after a claimant strictly satisfies the procedural requirements outlined in the TCHRA"); TEX. LAB. CODE ANN. § 21.201(b) ("The complaint must be in writing and made under oath."); TEX. GOV'T CODE ANN. § 311.034 (all statutory prerequisites to suit are jurisictional in suits against governmental entities). Issue One is sustained.

We need not address UTEP's remaining issues since our decision on the first issue on appeal is dispositive. TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and *necessary* to final disposition of the appeal.") (emphasis added).

### III. CONCLUSION

We reverse the trial court's judgment denying UTEP's plea to the jurisdiction and render judgment dismissing Isaac's claim for want of subject matter jurisdiction.


GINA M. PALAFOX, Justice

19

September 19, 2018

Before McClure, C.J., Rodriguez, and Palafox, JJ.