ACCEPTED
15-25-00038-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/11/2025 12:16 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00038-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
7/11/2025 12:16:09 PM
CHRISTOPHER A. PRINE
Clerk

In The Court of Appeals
Fifteenth District of Texas
Austin, Texas

# UNIVERSITY OF TEXAS AT ARLINGTON

*Appellant,*

v.

# JAMES MCMERCHANT

*Appellee.*

ON APPEAL FROM THE 236th JUDICIAL DISTRICT COURT,
TARRANT COUNTY, TEXAS
TRIAL COURT CAUSE NO. 236-337930-22

## APPELLEE'S BRIEF

Ali Crocker
Crocker Russell & Associates
200 W. Oak Street
Mansfield, Texas 76063
817-482-6570 – Phone
682-232-1850 – Fax
ali@cralawfirm.com

Attorney for James McMerchant (Appellee)

## Identity of Parties and Counsel

**Appellant**
**(Defendant in Trial Court):**     University of Texas at Arlington

**Counsel for Appellant:**          Brianna M. Krominga
                                    Lead Attorney
                                    Texas Bar No. 24103252
                                    Assistant Attorney General
                                    Office of the Attorney General
                                    General Litigation Division
                                    P.O. Box 12548
                                    Austin, Texas 78711
                                    214-290-8884 – Phone
                                    512-320-0667 – Fax

**Appellee**
**(Plaintiff in Trial Court):**     James McMerchant

**Counsel for Appellee:**           Ali Crocker
                                    Crocker Russell & Associates
                                    200 W. Oak Street
                                    Mansfield, Texas 76063
                                    817-482-6570 – Phone
                                    682-232-1850 – Fax

# Table of Contents

Identity of Parties and Counsel…..……………………………………………2

Table of Contents………………………………………………………....…3

Index of Authorities………………………………………………………....4

Relevant Procedural History……………………………………….…8

Factual Background……………………………………………………...8

Argument & Authority…………………………………………………...9

    A. Plea to the Jurisdiction…………………………………………9

        a. Standard of Review…………………………………………..9

        b. Response to Appellant's Brief…………………………………10

    B. Summary Judgment…………………………………………..14

        a. Standard of Review: No-Evidence Summary Judgment………...15

        b. Standard of Review: Traditional Summary Judgment…………...16

        c. Responsive Argument……………………………………18

           i. Plaintiff Can Establish a Prima Facie Case of Racial Discrimination……………………………………………….18

          ii. Plaintiff is a Member of a Protected Group……………….21

         iii. Plaintiff Was Qualified for the Position at Issue…………..21

         iv. Plaintiff Suffered Adverse Action……………………….21

          v. Plaintiff was Replaced by Someone Outside His Protected Group……………………………………………........25

         vi. Defendant does not have a legitimate, non-discriminatory reason for its actions……………………………………28

Conclusion & Prayer……………………………………………………30

Certificate of Service……………………………………………………31

Certificate of Compliance………………………………………………31

# Index of Authorities

## **Cases**

*Bland Indep. Sch. Dist. v. Blue*,
   34 S.W.3d 547 (Tex. 2000)……………………………………………………9

*Texas Ass'n of Bus. v. Texas Air Control Bd.,*
   852 S.W.2d 440 (Tex. 1993)…………………………………………………...9

*Board of Water Engineers v. City of San Antonio,*
   283 S.W.2d 722 (Tex. 1955)…………………………………………………10

*Heckman v. Williamson County,*
   369 S.W.3d 137 (Tex. 2012)…………………………………………………10

*Williams v. Lara,*
   52 S.W.3d 171 (Tex. 2001)…………………………………………………...10

*Soto v. El Paso Natural Gas Co.,*
   942 S.W.2d 671 (Tex.App.—El Paso 1997, pet. denied)…………………….11

*Wal–Mart Stores, Inc. v. Canchola,*
   121 S.W.3d 735 (Tex. 2003)…………………………………………………11

*Prairie View A & M Univ. v. Chatha,*
   381 S.W.3d 500 (Tex. 2012)…………………………………………………11

*Waffle House, Inc. v. Williams,*
   313 S.W.3d 796 (Tex. 2010)…………………………………………………11

*Williams-Pyro, Inc. v. Barbour,*
   408 S.W.3d 467 (Tex.App.—El Paso 2013, pet. denied)…………………….12

*Davis v. Fort Bend County,*
   893 F.3d 300 (5th Cir. 2018)…………………………………………………12

*University of Tex. v. Poindexter,*
   306 S.W.3d 798 (Tex.App.—Austin 2009, no pet.)……………………12, 13

*Santi v. Univ. of Tex. Health Sci. Ctr. at Houston,*
 312 S.W.3d 800 (Tex.App.—Houston [1st Dist.] 2009, no pet.)…………..12

*Lopez v. Texas State Univ.,*
 368 S.W.3d 695 (Tex.App.—Austin 2012, pet. ref'd)………….…………..13

*Thomas v. Clayton Williams Energy, Inc.,*
 2 S.W.3d 734 (Tex.App.—Houston [14th Dist.] 1999, no pet.)……...…….13

*Wal–Mart Stores, Inc. v. Davis,*
 979 S.W.2d 30 (Tex.App.—Austin 1998, pet. denied)………………………13

*Johnson v. Brewer & Pritchard, P.C.,*
 73 S.W.3d 193 (Tex. 2002)………………………………………………...15

*S.W. Elec. Power Co. v. Grant,*
 73 S.W.3d 211 (Tex. 2002)……………………………………………….15, 18

*Morgan v. Anthony,*
 27 S.W.3d 928 (Tex. 2000)………………………………………………...15

*Moore v. K Mart Corp.,*
 981 S.W.2d 266 (Tex.App.—San Antonio 1998, pet. denied)…………….15

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986)………………………………………………………..16

*Elliott-Williams Co. v. Diaz,*
 9 S.W.3d 801 (Tex. 1999)………………………………………………….16

*Centeq Realty, Inc. v. Siegler,*
 899 S.W.2d 195 (Tex. 1995)………………………………...………16, 17

*Nixon v. Mr. Property Mgmt. Co.,*
 690 S.W.2d 546 (Tex. 1985)……………………………………………….17

*Park Place Hosp. v. Estate of Milo,*
 990 S.W.2d 508 (Tex. 1999)……………………………………………….17

*Lear Sieglar, Inc. v. Perez*,

819 S.W.2d 470 (Tex. 1991)……………………………………………………17

*Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.,*
  184 S.W.3d 760 (Tex.App.—Dallas 2005, pet. denied)………………...17

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,*
  289 S.W.3d 844 (Tex. 2009)…………………………………………………18

*SAS Inst., Inc. v. Breitenfeld,*
  167 S.W.3d 840 (Tex. 2005)…………………………………………………18

*Rayon v. Energy Specialties, Inc.,*
  121 S.W.3d 7 (Tex.App.—Fort Worth 2002, no pet.)………………..18

*Lampasas v. Spring Ctr., Inc.,*
  988 S.W.2d 428 (Tex.App.—Houston [14th Dist.] 1999, no pet.)…...………18

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973)………………………………………………………18, 20

*McCoy v. City of Shreveport,*
  492 F.3d 551 (5th Cir. 2007)……………………………………………………19

*Wheeler v. BL Dev. Corp.,*
  415 F.3d 399 (5th Cir. 2005)……………………………………………………19

*Elgaghil v. Tarrant Cnty. Junior Coll.,*
  45 S.W.3d 133 (Tex.App.—Fort Worth 2000, pet. denied)……...…19, 20, 21

*Quantum Chem. Corp. v. Toennies,*
  47 S.W.3d 473 (Tex. 2001)…………………………………………………...19

*Greathouse v. Alvin Indep. Sch. Dist.,*
  17 S.W.3d 419 (Tex.App.—Houston [1st Dist.] 2000, no pet.)……………20

*Little v. Tex. Dep't of Criminal Justice,*
  177 S.W.3d 624 (Tex.App.—Houston [1st Dist.] 2005, no pet.)…………..20

*Tex. Health & Human Servs. v. Sepulveda,*
  668 S.W.3d 856 (Tex.App.—El Paso 2023)………………………………22

6

*Laxton v. Gap Inc.,*
   333 F.3d 572 (5th Cir. 2003)……………………………………………….28

*Wallace v. Methodist Hosp. Sys.,*
   271 F.3d 212 (5th Cir. 2001)…………………………………………….28

*Delaval v. PTech Drilling Tubulars, L.L.C.,*
   824 F.3d 476 (5th Cir. 2016)…………………………………………….28

## **Statutes**

Texas Labor Code § 21.051………………………………………………..11, 19, 28
Texas Labor Code § 21.201 & § 21.202………………………………………..12
Texas Government Code § 311.034…………………………………………11
Texas Rules of Civil Procedure 166a(i) & 166a(c)……………………….15, 16, 18
Texas Rules of Appellate Procedure 9.4(e), 9.4(i)……………………………..31
Title VII of the Civil Rights Act of 1964, as amended………………………..11, 19

## RELEVANT PROCEDURAL HISTORY

On October 20, 2022, Plaintiff filed its Original Petition.

On November 10, 2022, Defendant filed its Original Answer.

On January 26, 2023, Plaintiff filed its First Amended Petition.

On February 26, 2024, Defendant filed its Plea to the Jurisdiction and Motion for Summary Judgment.

On March 13, 2025, the Trial Court entered and Order on March 13, 2025, denying Defendant's Plea to the Jurisdiction and Motion for Summary Judgment.

On April 2, 2025, Defendant timely its Notice of Appeal.

On April 14, 2025, the Clerks record was filed.

Appellant (Defendant) filed its brief on May 27, 2025.

## FACTUAL BACKGROUND

Plaintiff is an African American male who was initially hired by Defendant in June of 2015 as a Warehouse Worker II in the Property Management Department within the Division of Business Affairs. *See Exhibit A*.

In 2016, Plaintiff was asked to assist in the Mail Services Department; to which he agreed. Between 2016 and 2017, Plaintiff continued to work as both a mail clerk and warehouse worker. In the spring of 2017, Plaintiff was solely doing mail clerk job duties.

8

Defendant instead hired Derek Gieralt, a younger, Caucasian male, under the job title of Mail Carrier II. Mr. Gieralt began working as a warehouse employee but with the Mail Carrier II title and pay, which was previously promised to Plaintiff.

In response, Plaintiff's supervisor in the Mail Services Department promised him a raise. However, years go by, and Plaintiff never receives such raise, and his complaints and concerns are ignored.

Since the spring of 2017, Plaintiff repeatedly filed his concerns that he was not given the appropriate pay raise associated with the Mail Clerk II position. In October of 2020, Defendant finally "reclassified" to Mail Carrier II with a salary increase of over 5% to $30,000.00. *See Exhibit B.*

## ARGUMEMT AND AUTHORITY

### A. Plea to the Jurisdiction

#### a. Standard of Review

When reviewing a plea to the jurisdiction, a court should limit itself to the jurisdictional issue and avoid considering the merits of the claims. *Bland Indep. Sch. Dist. V. Blue*, 34 S.W.3d 547, 552 (Tex. 2000). The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject-matter jurisdiction. *Texas Ass'n of Bus. V. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). Texas Courts will liberally construe the pleadings in favor of the plaintiffs and look to the pleaders' intent. Id. If the issue of jurisdiction cannot be

9

definitively determined by the pleadings, the plaintiff will be afforded the opportunity, if possible, to amend and cure the defects in order to establish jurisdiction. Id. If the plea challenges jurisdictional facts, the Court may consider evidence in order to either establish that it has jurisdiction to hear the cause of action or that such jurisdiction does not exist. Id.

Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case. Id. at 443. The general test for standing in Texas requires that there "(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." Id. at 446 (citing *Board of Water Engineers v. City of San Antonio*, 155 Tex. 111, 114, 283 S.W.2d 722, 724 (1955)). A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer "live," or if the parties lack a legally cognizable interest in the outcome. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 55 Tex. Sup. Ct. J. 803 (Tex. 2012) (citing *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001)).

### b. Response to Appellant's Brief

The Court should deny Defendants' request to review the Trial Court's judgment Plaintiff timely and sufficiently exhausted his administrative remedies. Plaintiff filed its charge stating that Defendant discriminated against him based on

race and in violation of Chapter 21 of the Texas Labor Code and Title VII of the Civil Rights Act of 1964 as amended. Likewise, in Plaintiff's First Amended Complaint, Plaintiff filed suit against Defendant for Title VII Discrimination based on Race. *See Exhibit B.*

Chapter 21 of the Texas Labor Code addresses employment discrimination. TEX.LAB.CODE ANN. §§ 21.001-55. The Act makes it unlawful for an employer to discriminate against an employee with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, or national origin. *Id.* at § 21.051. The Act is modeled on federal law and executes the purposes of Title VII of the Civil Rights Act of 1964. *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 677 (Tex.App.—El Paso 1997, pet. denied). Because the legislature intended for state law to correlate with federal law in employment discrimination cases, the courts may look to analogous federal cases when applying the Act. *Id.* (citing Tex. Lab. Code § 21.001 and *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) ). The legislature has mandated that all statutory prerequisites to suit are jurisdictional requirements in suits against governmental entities. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 510 (Tex. 2012) (citing Tex. Gov't Code § 311.034).

A person claiming a violation of the Act must first exhaust her administrative remedies prior to bringing a civil action. *Waffle House, Inc. v. Williams*, 313 S.W.3d

11

796, 804 (Tex. 2010); *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 475 (Tex.App.—El Paso 2013, pet denied). Exhausting administrative remedies is a "mandatory prerequisite" in Texas. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 488 (Tex. 1991), *overruled in part on other grounds by In re United Servs. Auto Ass'n*, 307 S.W.3d 299, 310 (Tex. 2010). Recent Fifth Circuit precedent describes the analogous Title VII requirement as a "prudential prerequisite" that similarly can result in the dismissal of a suit. *Davis v. Ft. Bend County*, 893 F.3d 300, 308 (5th Cir. 2018)("Title VII's administrative exhaustion requirement is not a jurisdictional bar to suit but rather a prudential prerequisite under our binding precedent, [which can be forfeited when not timely raised].").

To bring a lawsuit for unlawful employment practices, a plaintiff must first have filed an administrative charge with the EEOC or the TWC. *Williams*, 313 S.W.3d at 804-05; *University of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex.App.—Austin 2009, no pet.). A plaintiff must file her charge within 180 days of the alleged discriminatory practice with the TWC or 3400 days of the alleged discrimination practice with the EEOC and any late-filed charge will be dismissed as untimely. TEX.LAB.CODE ANN. §§ 21.201, 21.202.

The charge must contain an adequate factual basis to put the employer on notice of the existence and nature of the claims against it. *See Santi v. Univ. of Tex.*

*Health Science Ctr. at Houston*, 312 S.W.3d 800, 805 (Tex.App.—Houston [1st Dist.] 2009, no pet.).

Thus, this court does have jurisdiction over Plaintiff claims as Plaintiff timely filed his complaint, exhausted all his administrative remedies and the factually related claims could reasonably be expected to fall within the agency's investigation of the claims stated in the charge. *Fine*, 995 F.2d at 578; *Lopez v. Texas State Univ.*, 368 S.W.3d 695, 710 (Tex.App.—Austin 2012, pet ref'd); *Poindexter*, 306 S.W.3d at 810; *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex.App.— Houston [14th Dist.] 1999, no pet.).

Plaintiff meets his administrative remedies burden by the "continuing violation" doctrine. A "continuing action" is unlawful discrimination that "manifests itself over time, rather than a series of discrete acts." *Wal–Mart Stores, Inc. v. Davis,* 979 S.W.2d 30, 41–42 (Tex.App.-Austin 1998, pet. denied). When such "continuing violation" discrimination occurs, the 180 and/or 300 day filing clock does not begin to run until one of the involved discriminatory events "should, in fairness and logic, have alerted the average layperson to act to protect his or her rights." *Id.* at 42.

Plaintiff contends and Defendant's also agree that Plaintiff was completing the job duties of a Mail Clerk II since 2017 but was never given the correct job title and/or pay raise between 2017-October of 2020. Plaintiff contends and Defendant's

13

agree that Plaintiff did not receive a pay increase and promotion to Mail Clerk II until October of 2020. *See Exhibit A and D.*

Based on Plaintiff's contention and Defendant's agreement of those facts, the adverse employment actions and discrimination was continuous from 2017 until he was finally given the promotion and raise that was fitting to his job duties in October of 2020.

Plaintiff filed his charge of discrimination on one hundred and forty-eight (148) days after the last day of the continued adverse employment action (failing to promote and failure to remedy your pay discrepancy) on January 13, 2021. *Id.* Therefore, his charge was timely filed.

Plaintiff's charge includes several examples of how he was passed over for promotions, title and equal pay beginning in 2017. It is uncontested that Plaintiff is still employed by Defendant and thus, Plaintiff contends that this continuing action of discriminatory practices by Defendant is still on-going. Plaintiff states in his charge that as of [January 13, 2021], Plaintiff job title does not reflect his current job duties and is being grossly underpaid; thus, making his charge timely filed.

Therefore, Plaintiff requests that this Court **deny** Defendant's request to reverse the Trial Court's judgment for lack or jurisdiction based on Plaintiff's timely filing of his charge and exhaustion of his administrative remedies.

**B. Summary Judgment**

### a. Standard of Review: No-Evidence Summary Judgment

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.; Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207, 45 Tex. Sup. Ct. J. 470 (Tex. 2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX. R. CIV. P. 166a(i) & cmt.; *S.W. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215, 45 Tex. Sup. Ct. J. 502 (Tex. 2002).

We review the evidence in the light most favorable to the party against whom the no- evidence summary judgment was rendered. *Johnson*, 73 S.W.3d at 197; *Morgan v. Anthony*, 27 S.W.3d 928, 929, 43 Tex. Sup. Ct. J. 1172 (Tex. 2000). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.--San Antonio 1998, pet. denied).

More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711, 40 Tex. Sup. Ct. J. 846 (Tex. 1997).

15

A genuine issue of material fact is raised by presenting evidence on which a reasonable jury could return a verdict in the nonmovant's favor. *Moore,* 981 S.W.2d at 266; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986) (interpreting FED. R. CIV. P. 56).

### b. Standard of Review: Traditional Summary Judgment

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803, 43 Tex. Sup. Ct. J. 200 (Tex. 1999). The defendant as movant must present summary judgment evidence that negates an element of the plaintiff's claim. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197, 38 Tex. Sup. Ct. J. 658 (Tex. 1995). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Id.*

In a traditional motion for summary judgment, summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). The motion must state the specific grounds relied upon for summary judgment. *Id*. The standard of review for a traditional summary judgment is well established: (1)

16

the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is therefore entitled to summary judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor. See, e.g., *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

When a movant files a motion for summary judgment based on the summary judgment evidence, the court can grant the motion only when the movant's evidence, as a matter of law, either proves all of the elements of the Movant's claim or defense or disproves the facts of at least one element of the non-movant's claims or defense. *Park Place Hosp. v. Estate of Milo*, 990 S.W.2d 508, 511 (Tex. 1995); *Lear Sieglar, Inc. v. Perez*, 819 S.W.2d 470, 471-72 (Tex. 1991).

Even if a movant can present evidence showing that it has proven its case, this Court may not grant summary judgment if the non-movant presents evidence that creates a question of fact on an essential element of the movant's cause of action. *Case Corporation v. Hi-Class Business Sys. Of America, Inc.*, 184 S.W.3d 760, 776 (Tex. App.—Dallas 2005 pet. Denied).

### c. Responsive Argument

Plaintiff, Respondent herein, files this Response to Defendant's request to rever

the Trial Court's judgment and respectfully shows the Court as follows:

Defendant's Motion for Summary Judgment should also be denied because there exists a genuine issue of material fact between the parties. **Movants bear the burden of establishing there is no question of material fact and that [it] is entitled to judgment as a matter of law**. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (per curiam); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

A fact is material when it "affects the ultimate outcome of the suit under the governing law." *Rayon v. Energy Specialties, Inc.*, 121 S.W.3d 7, 11 (Tex. App.--Fort Worth 2002, no pet.) (citing *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 433 (Tex. App.--Houston [14th Dist.] 1999, no pet.)). "A material fact issue is 'genuine' only if the evidence is such that a reasonable jury could find the fact in favor of the nonmoving party." *Id*. at 11-12.

i. **Plaintiff Can Establish a Prima Facie Case of Racial Discrimination**

The four-point test to determine discrimination in the workplace is derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In a private, non-class-action complaint under Title VII charging employment discrimination, the complainant has the burden of establishing a prima facie case, which she can satisfy

by showing that she (i) is a member of a protected group; (ii) was qualified for the position at issue; (iii) was discharged or suffered some adverse employment action by the employer; and (iv) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)(citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)).

Under the TCHRA, an employer commits an unlawful employment practice if, because of an employee's race, the employer "discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." TEX. LABOR CODE ANN. § 21.051(1) (Vernon 2006). The Texas Legislature patterned the TCHRA after federal law "for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Elgaghil v. Tarrant Cnty. Junior Coll.,* 45 S.W.3d 133, 139 (Tex.App.-Fort Worth 2000, pet. denied); *see also Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 474 (Tex.2001) (stating same). Thus, when analyzing a claim brought under the TCHRA, we look not only to state cases, but also to the analogous federal statutes and the cases interpreting those statutes. *Toennies,* 47 S.W.3d at 476.

Once the plaintiff establishes a prima facie case, the burden of production

shifts to the defendant-employer to articulate legitimate non-discriminatory reasons for any allegedly unequal treatment. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Greathouse v. Alvin Indep. Sch. Dist.,* 17 S.W.3d 419, 423 (Tex.App.-Houston [1st Dist.] 2000, no pet.). After the employer articulates a non-discriminatory reason, the burden then shifts back to the plaintiff to prove that the articulated reason is a mere pretext for unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Greathouse,* 17 S.W.3d at 423. Although the burden of production shifts between the parties, the burden of persuasion "remains continuously with the plaintiff." *Greathouse,* 17 S.W.3d at 423.

To raise a fact issue on the pretext element of a race-discrimination claim, the nonmovant must present evidence "indicating that the non-discriminatory reason given by the employer is false or not credible, and that the real reason for the employment action was unlawful discrimination. *Elgaghil,* 45 S.W.3d at 140. A plaintiff can avoid summary judgment if the evidence, taken as a whole, creates a fact issue "as to whether each of the employer's stated reasons was not what actually motivated the employer *and* creates a reasonable inference that [race] was a determinative factor in the actions the plaintiff is now complaining about." *Id.* (emphasis in original); *see also Little v. Tex. Dep't of Criminal Justice,* 177 S.W.3d 624, 632 (Tex.App.-Houston [1st Dist.] 2005, no pet.)

### ii. Plaintiff is a Member of a Protected Group

The first two elements are not disputed by Defendants. However, in an abundance of caution, Plaintiff belongs to a protected class under Title VII because he is an African American male.

### iii. Plaintiff Was Qualified for the Position at Issue

Plaintiff is/was qualified for the position of Mail Clerk by virtue of his experience, training, tenure at Defendant and his continued employment. Again, this is not disputed by the Defendant. Plaintiff received complimentary evaluations between 2016-present.

### iv. Plaintiff Suffered Adverse Action

Defendant's arguments in their respective *Motion* give rise to several questions of fact that in and of itself allow Plaintiff to overcome summary judgment. Both Defendant and Plaintiff present the same question, but different explanations as to why was Plaintiff not given a pay raise and promotion to Mail Clerk II until the fall of 2020 when he was doing the job duties since 2017? Defendant fails to offer any conclusive evidence or case law that would establish their explanation is sufficient to deny Plaintiff's claims as a matter of law.

Generally, adverse employment decisions involve hiring, granting leave, discharging, promoting, and compensating employees. *Winters,* 132 S.W.3d at 575; *Elgaghil,* 45 S.W.3d at 143

A failure to promote is generally considered an adverse employment action. *Tex. Health & Human Services, et. al. v. David Sepulveda,* 668 S.W.3d 856, (Tex.App-El Paso 2023). Plaintiff continuously received an adverse action by Defendant by failing to properly pay and promote him throughout his continued employment with Defendant between 2017 – the October of 2020. *See Exhibit A.*

Defendant has a history of failing to promote and give merit pay raises to employees of color. *Id.* Toliver, an African-American retired employee of Defendant's told Plaintiff that he quit due to the pay discrepancies between black and white employees.

Defendant acknowledges that Plaintiff was solely doing the job duties of a Mail Clerk II since 2017 and also that Defendant failed to promote him or give him the appropriate pay raise that reflected his job duties until October of 2020. *See Exhibit A and D.* While he was wrongly held back between 2017 and 2020, another Caucasian male, Derek Gireralt was given the Mail Clerk II title and pay raise but worked in the warehouse. *See Exhibit A and D.*

Derek Gireralt was significantly less qualified for this position and worked for Defendant's less time. Derek Gireralt had only been there one year or less while Plaintiff had been there several and also trained other employees. *Id*.

After Derek was promoted to Mail Clerk II, he bragged to Plaintiff that he was promoted so quickly, after only being employed by Defendant for one year and received a $5,000.00 raise. *See Exhibit A*. Plaintiff specifically asked Derek Gireralt what his job title was and told Plaintiff that he was a Mail Clerk II. *Id*.

At that time, Plaintiff began repeatedly went to his supervisor, Jason Welch, who represented that he was working to correct his pay discrepancies with Human Respouses. *Id*. In the fall of 2019, Mr. Welch promised Plaintiff that he would receive the proper title and pay raise, but he never did. *Id*. Plaintiff received the run around and became distraught. *Id*. Plaintiff began investigating why he was not being promoted and not being paid fairly. *Id*. Several co-workers and even a supervisor informed Plaintiff that they "thought it was wrong," and Derek Gireralt even went as far as to pull Plaintiff aside to express that he thought this was about "race." *Id*.

The credibility of Defendant's explanation is one for the determination of a jury and is improper for summary judgment. Defendant's only explanation as to this inequity was that there was an error on Defendant's website and public data in labeling Derek Gireralt's job title as a Mail Clerk II; thus, creating a question of fact

23

as to Defendant's motivation of their adverse action. *See Exhibit A and D*. However, Plaintiff has personal knowledge that Derek Gireralt's was hired and promoted to Mail Clerk II and not a coordinator. *Id*. Plaintiff heard Derek Gieralt bragging on multiple occasions that he was getting additional pay for work that he did not do as he only worked in the warehouse but was being paid as a mail clerk. *Id.*

Defendant incorrectly represents that Plaintiff's "reclassification" to Mail Clerk II is a lateral move with no promotion. Defendant's own documents show that Plaintiff was given an increase in salary from $28,428.00 to $30,000.00 (a 5.53% raise) in October of 2020 when he was "reclassified." *See Exhibit D.* Plaintiff asserts that a 5.53% salary increase is considered a promotion and not just a mere "reclassification" nor is it a lateral move.

Furthermore, Defendant's justification of the failure to promote and pay inequities is merely conjecture and pretext. Defendant states that Plaintiff was never promoted and given the appropriate pay raise because of a "hiring freeze" yet Defendant never provides any proof of the "hiring freeze" or proof of how long the "hiring freeze" was in place. Defendant also alleges that Plaintiff asked for an increase in pay and promotion that fit his job duties in "late 2019" but then blames the COVID-19 freeze as an explanation why this did not occur until October of 2020. Plaintiff is confused as to Defendant's assertions because as we are all aware, COVID-19 pandemic did not start until mid-March of 2020… Plaintiff is doubtful,

and it is highly unlikely that the "hiring freeze" spanned over a course of three years (between 2017 – 2020).

Defendant's own electronic communications represent that they only began to attempt to promote Plaintiff in September of 2020, well after the COVID-19 pandemic. *See Exhibit E*. In Defendant's September 2020 electronic communications between Jason Welch and human resources, there is no mention of the "lifting of the hiring freeze' or "COVID-19." *Id*.

Defendant also asserts that Plaintiff's raise increase was not a "function of [his] job title but rather a "reflection that [Plaintiff] had taken additional stops on his route…" *See Exhibit D*. However, Defendant offers zero proof of this assertion and instead offers conclusory statements in their respective motion.

Therefore, Plaintiff has provided sufficient proof and creates a question of fact as to whether there was an adverse action.

        v.    **Plaintiff was Replaced by Someone Outside His Protected Group or was Treated Less Favorably Than Other Similarly Situated Outside His Protected Group or was Treated Less Favorably Than Other Similarly Situated Employees Outside the Protected Group.**

Plaintiff was treated less favorably than a similar situation employee, Derek Gireralt and was passed over for a job promotion with higher pay than someone outside his protected group. Further, the mere basis of Defendant's assertions creates a question of fact as to whether or not Plaintiff was treated less favorably than a similarly situation employee outside their protected class.

Derek Gireralt, a caucasian male was initially hired as a Warehouse Worker in 2016 and was then promoted as a Mail Clerk II and was given higher pay than Plaintiff in 2017. *See Exhibit A and D*. Derek Gireralt was given the title Mail Clerk II and bragged about how he received the Mail Clerk II promotion instead of Plaintiff. *Id*. When Derek Gireralt was promoted in 2017, he was given a salary increase of 24.04%, $25,788 to $32,000.00. *Id*. At this time, Plaintiff was only receiving approximately $26,000.00 in salary benefits and had a continuous pay discrepancy of over $6,000.00 for *four years* for conducting the same job duties.

Again, Derek Gireralt informed Plaintiff that he was promoted to Mail Clerk II position. *See Exhibit A* and *Exhibit F*; McMerchant Dep. 47:8-11. When Plaintiff began investigating why Derek Girealt was promoted instead of me, Derek Girealt pulled me aside and told me that he thought it was "because of race." *See Exhibit A*. It was so obvious that on another occasion, Derek Girealt advised Plaintiff to report what was going on to human resources. *Id*.

The mere question of what Derek Gireralt's job duties were, and what is "title" was creates question of fact that is sufficient to overcome summary judgment. Defendant claims that he was given a different job title of "Coordinator I, Special Programs" but that is not what is listed in public records nor is that what Derek Gireralt claimed. *See Exhibit G*. Defendant's website has his job titled listed as "Mail Clerk II." *Id*.

Defendant's only explanation as to this inequity was that there was an error on Defendant's website and public data in labeling Derek Gireralt's job title as a Mail Clerk II. *See Exhibit A and H*. During Plaintiff's Deposition, Defendant showed Plaintiff *Exhibit G* a printout from their website which listed Derek Gireralt's job title as "Mail Carrier II" *See Exhibit F*; McMerchant Dep. 34:11-25; 35:1-25. Thus, Defendant was holding Derek Gireralt out as a Mail Carrier II during the relevant time frame of 2019-2020, *Id*. Plaintiff has personal knowledge that Derek Gireralt's hiring and promotion to Mail Clerk II was not a clerical mistake and seems like a convenient explanation given by Defendant. *See Exhibit A*.

Defendant also claims that Derek Gieralt's job is not similarly situated but in fact, Defendant concedes that both Plaintiff and Mr. Gieralt are in the same department and supervisors conducting similar work; "duties associated with Warehouse Worker and Mail Carrier." Plaintiff continuously asserts that Derek Gieralt actual job duties were very similar to his. *See Exhibit A*.

27

Defendant's own evidence and published admissions create contradictory factual allegations that overcome summary judgment. Defendant insists that Plaintiff's belief that Derek Gieralt was promoted to a mail clerk was mistaken but don't acknowledge or explain Plaintiff's belief is based on Defendant's own admission through their labeling Derek Gieralt as a mail clerk on their website.

Therefore, Plaintiff has provided sufficient proof and creates a question of fact as to whether there he was treated less favorably than similarly situated employees not in his protected class.

> ### vi. Defendant does not have a legitimate, non-discriminatory reason for its actions and their explanations are mere pretext for discrimination.

The phrase "because of race" is also used in the Texas Labor Code, which makes an employer liable for taking action adverse to an employee "because of race." *See* Tex. Lab. Code §21.051. Pretext is established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence." *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)); *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 32 A.D. Cases 1405 (5th Cir. 2016). At summary judgment, "[e]vidence demonstrating that the employer's

28

explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir.2003).

Defendant has alleged its legitimate, nondiscriminatory reasoning for failing to promote and pay Plaintiff was based on a "clerical mistake" and COVID-19 delays. The purported reasonings are pretext for Defendant's discriminatory animus towards its African-American employees.

Defendant's timeline of events in and of itself creates a question of fact as to the credibility of their "legitimate reason" for the delay in Plaintiff's promotion and pay increase that matched his job duties. Again, Defendant blames COVID-19 but fails to remedy how COVID-19 can be blamed when it didn't start until mid-March of 2020… three years after Plaintiff initially requested the pay increase.

Plaintiff, Derek Girealt and Plaintiff's co-workers all long alleged that Defendant's failure to promote and pay inequity was because of race. Defendants have provided no other credible alternative as to why a less experienced, Derek Girealt was promoted instead of Plaintiff or why it took Defendant nearly a year to promote him for the second promotion opportunity.

Again, because Defendant's explanation of the adverse action of Plaintiff is unworthy of credence, a fact finder may make an inference of discrimination. Thus,

29

Plaintiff has provided sufficient evidence to overcome summary judgment and create a question of fact as to the true motivation behind Defendant's actions.

## CONCLUSION AND PRAYER

Defendant's request should not be granted. Accepting as true all evidence presented by Plaintiff and indulging every inference and resolving all doubt in Plaintiff's favor, Defendant has failed to show that as a matter of law Plaintiff's claims should be dismissed.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court will deny Defendant's request for reversal of the Trial Court's Denial of Defendant's Motion for Plea to the Jurisdiction and Traditional and No-Evidence Motion for Summary Judgment and order such other relief as may be appropriate.

Respectfully submitted,

Crocker Russell & Associates
200 W. Oak Street
Mansfield, Texas 76063

/s/ Ali Crocker Russell
Ali Crocker Russell
Bar no: 24098868
Phone: (817) 482-6570
Fax: (682) 232-1850
Email: ali@cralawfirm.com

## Certificate of Service

I certify that a true copy of this document was served in accordance with Texas Rules of Civil Procedure and that all documents have been served via the Court's electronic notification system on July 7, 2025.

/s/ Ali Crocker Russell
Ali Crocker Russell

## Certificate of Compliance

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 2,923 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1)

/s/ Ali Crocker Russell
Ali Crocker Russell

**No. 15-25-00038-CV**

---

In The Court of Appeals
Fifteenth District of Texas
Austin, Texas

---

**UNIVERSITY OF TEXAS AT ARLINGTON**

*Appellant,*

v.

**JAMES MCMERCHANT**

*Appellee.*

---

ON APPEAL FROM THE 236th JUDICIAL DISTRICT COURT,
TARRANT COUNTY, TEXAS
TRIAL COURT CAUSE NO. 236-337930-22

---

**APPENDIX**

---

1. Affidavit (Exhibit A) ……………………………………………………….33
2. Charge of Discrimination (Exhibit B)………………………………….....36
3. UTA Human Resources Performance Review (Exhibit C)…………………37
4. Salary for James McMerchant (Exhibit D)…………………………………44
5. E-Mails (Exhibit E)…………………………………………………………45
6. Transcript of Deposition (Exhibit F)………………………………………50
7. UTA Staff Property Management Chart (Exhibit G)………………………53
8. Declaration of Jason Welch (Exhibit H)……………………………………55

1

CAUSE NO. 236-337930-22

| JAMES MCMERCHANT | § | IN THE DISTRICT COURT |
| *PLAINTIFF* | § | |
| | § | |
| | § | |
| VS | § | 236th JUDICIAL DISTRICT |
| | § | |
| UNIVERSITY OF TEXAS AT | § | |
| ARLINGTON | § | |
| *DEFENDANT* | § | TARRANT COUNTY, TEXAS |

## AFFIDAVIT IN SUPPORT OF WRIT OF ATTACHMENT

James McMerchant personally appeared before me and stated under oath:

"My name is James McMerchant. I am over the age 18. I am competent to testify and therefore make this Affidavit. This Affidavit is based on my personal knowledge and the facts are true and correct.

"I was continuously discriminated against due to my race because they continuously failed to promote me to Mail Clerk II and give me the right pay until October of 2020. I inquired several times as to why I was doing a Mail Clerk II job but wasn't given the title or pay raise. A white male, Derek Gieralt was given the promotion and substantial raise over me.

"I am the Plaintiff in this suit. I am an African-American male and was initially hired by Defendant in June of 2015 as a Warehouse Worker II. I worked under the Property Management Department within the Business Affairs. I am a hard worker and always receive glowing feedback from my supervisors during my annual reviews.

"Several months into my employment, I was asked to "cross-train" and learn how to do the job duties of a mail clerk. However, in 2016, I began to solely do mail clerk duties and was one of two individual employees who were expected to carry out these duties. In the spring of 2017, a mail clerk, Alford retired from the mailroom. I started asking my supervisor if I could be promoted and given the title of mail clerk. I believe the mail clerk made a couple thousand dollars more than a Warehouse Worker and I would have appreciated the raise in pay. My supervisor informed me that he would look into it. In order to fill Alford's position, they hired Derek to fill the position.

# EXHIBIT A

"After Derek was promoted to Mail Clerk II, he was so happy and always bragged about how quickly he received his promotion. I asked him what his new job title was, and he told me "Mail Clerk II." He told everyone and sang it from the rooftop that he got a $5,000.00 raise. We all thought was unusual because he had only been employed by UTA for a year.

"Between 2017 – 2019, I inquired about this promotion and increased pay several times. In fact, I even inquired with human resources. I always got the run around. Finally, around November 2019, when we learned CW was retiring, my supervisor told me that I would finally be able to become a Mail Clerk II and get my promotion and raise.

"After November 2019, I inquired several times about when I would receive my promotion and raise. I went to my supervisor in December of 2019, and he told me that we would have to wait until the beginning of 2020. Then, by February 2020, I asked my supervisor again. I told him that "it didn't seem like he was interested in fixing my situation." My supervisor informed me that he would look into and speak with HR. I asked a third time after COVID-19 had already begun in March 2020. Again, my supervisor just shrugged his shoulders and said, "he would look into it." I went to my supervisor one more time in the summer of 2020 and he blew me off. At no point did my supervisor ever advise me that he could not give me a promotion because of a "hiring freeze" or because of COVID-19.

"I was so frustrated and my co-workers could see how upset I was about my lack of promotion and pay increase. I started to ask around and ask questions… like "why do you think this is happening?" Derek Gieralt pulled me aside twice. He pulled me aside when CW retired and said "James, I think they're not promoting you because of race…" My heart sank. Derek Gieralt was a good man, and he even could see the inequities going on. During the summer of 2020, Derek Gieralt pulled me aside again and told me to make a report to HR because he thought that Jason was being racist towards me.

"Charle Russell is a white manager who works in the same building as us talked to me on several occasions in 2019 after CW retired. He told me that he knew my supervisor, Jason was wrong for promoting Derek to Mail Clerk II over me. Mr. Russell acknowledged that Derek was a Mail Clerk II and that I should have been promoted and given a pay raise.

"Toliver used to work in the mailroom as well and he retired in December 2022. He told me that he retired because of the pay discrepancies between white and black employees. We all noticed that the black employees didn't receive any other raises other than the standard "cost of living" raises while the white employees always seemed to get merit raises.

"I finally received a promotion of Mail Clerk II and a salary increase after I retained Counsel in October of 2020. They ended up backdating the pay to begin in September of 2020; which I thought was odd at the time.

"While I am still employed at UTA, I find it extremely disappointing that they would claim that Derek was promoted to another job title other than "Mail Clerk II…" Everyone knows, including myself, that Derek was promoted to Mail Clerk II position; any other representation is a lie. I believe that I was passed up for a promotion in favor of white employees because UTA discriminates against minorities.

"I was more qualified and had been working at UTA longer than Derek and had significantly more experience than Derek to perform the Mail Clerk II job. I had already been doing those same job duties for over a year. All of the reasons why they passed me up for my promotion do not make any sense. I was never told that COVID-19 was the hold up for my promotion and was always advised that I would get this pay raise but they would inevitably ignore me. It wasn't until I got an attorney that human resources even responded to my request to live up to my supervisors promises."

_____
James McMerchant, Affiant

**STATE OF TEXAS**          §
                            §
                            §
**COUNTY OF** Tarrant       §

Sworn to and subscribed before me on the 12th of April, 2024, by James McMerchant.

MICALA MUNOZ
Notary Public, State of Texas
Comm. Expires 11-23-2027
Notary ID 130451465

_____
Notary Public, State of Texas

DocuSign Envelope ID: 3A54A83E-9AEF-464D-A92D-3E6C96BF8BB6

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge Number(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [x] FEPA | 1A21464 |
| | [x] EEOC | 31C-2021-00415 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. James McMerchant | (817) 773-6456 | 08/03/1955 |

Street Address
City, State and ZIP Code

7413 Beckwood Drive
Fort Worth, Texas 76112

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| University of Texas at Arlington | | (817) 272-2142 |

Street Address
City, State and ZIP Code

1225 West Mitchell Street
Arlington, Texas 76012

DISCRIMINATION BASED ON   Race and Age

| DATE(S) DISCRIMINATION TOOK PLACE: | Earliest: 2017 | Latest: 08/18/2020 |
|---|---|---|

THE PARTICULARS ARE:

**I. PERSONAL HARM**

Mr. McMerchant is an African-American male who is currently employed as a Mail Carrier II. In 2017, Mr. McMerchant was promoted from a warehouse worker to a Mail Carrier II position. However, UTA failed to change his job title and give him the appropriate pay raise associated with his promotion. Mr. McMerchant has repeatedly brought up his concerns to his manager, Jason Welch as well as the human resource department to officially change his job title and increase his pay to reflect his promotion. In 2019, Mr. Welch informed Mr. McMerchant that when another employee by the name of, C.W. Gayle left his position, his pay would be adjusted to his job as a Mail Carrier II. In 2016, UTA hired Mr. Derek Gieralt, a white male, as a Warehouse Worker , but after seven months was promoted to Mail Carrier II. To date, Mr. McMerchant's job title does not reflect his current job duties and Mr. McMerchant has been grossly underpaid.

**I. RESPONDENT'S REASON FOR ADVERSE ACTION:**   Respondent claims Mr. McMerchant stated he did not want a pay increase

**III. DISCRIMINATION STATEMENT:**

I believe I have been discriminated against in violation of Texas Labor Code, Chapter 21 and Title VII of the Civil Rights Act of 1964 as Amended based on my Race and Age

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

COMPLAINANT COMPLETES BELOW:
My name is JAMES *(First)* _____ McMerchant *(Last)*, my date of birth is 8-3-1955
and my address is 7413 BECKWOOD DR. *(Street)* FORT WORTH *(City)*, TX, 76112 *(Zip)*, USA *(Country)*.
Executed in TARRANT County, State of Texas, on the 13 day *(Day)* of JANUARY *(Month)*, 20 21 *(Year)*.

I declare under penalty of perjury that the above is true and correct.

_James Mc Merchant_
Charging Party Signature

**EXHIBIT B**

1-13-2021    **UTA-0001**
Date

UNIVERSITY OF
**TEXAS**
ARLINGTON

Human Resources

**Performance Management**
**Employee Evaluation: Staff**

Form 3-81
1/5/2018
Page 1 of 7



| Employee ID: | | Review Period: Jan-Dec (previous year) | | Review Date: |
|---|---|---|---|---|

**Employee Name:** JAMES MCMERCHANT — **Position Title:** WAREHOUSE WORKER III

**Manager:** JAMES EDGERSON — **Department:** MAIL SERVICES

| Review Type: | New Employee | | 3 Months | | | |
|---|---|---|---|---|---|---|
| | New Employee | | 6 Months | | Annual | X |

IMPORTANT Review the performance definitions and the evaluation below as you fill out this form

**RESULTS:** Evaluate the employee's performance utilizing the factors below.

**Job Knowledge**                                                           Rating: 3

Manager's Comments:

You stepping up to learn how to work the Neopost inserter machine has really helped out the department a lot. As well as making sure that the Nonprofit mailing are taken to the post office for processing.

**Quality of Work**                                                         Rating: 4

Manager's Comments:

Your willingness to learn the Neopost inserter is very helpful for the departments growth. You are learning how to use it more an more each day.

**Quantity of Work**                                                        Rating: 3

Manager's Comments:

Your effort to ensure we meet the daily requirements is evident everyday.

**Responsibility and Dependability**                                        Rating: 3

Manager's Comments:

Your willingness to help Property Management when needed is great for both departments

**EXHIBIT C**

UTA-0310

UNIVERSITY OF
**TEXAS**
ARLINGTON

Human Resources

**Performance Management**
**Employee Evaluation: Staff**

Form 3-81
1/5/2018
Page 2 of 7



**Employee ID:**          **Review Period:** Jan-Dec (previous year)       **Review Date:**

---

**Attendance & Punctuality**           Rating: 4

Manager's Comments:

James is always on work on time and ready to work when the mail arrives.

**Collaboration/Teamwork**           Rating: 3

Manager's Comments:

Always helping out other coworkers when asked. Continue to check with Property Management to see if you can assist them with anything.

**Effective Use of Time**           Rating: 3

Manager's Comments:

Makes sure all mail is processed and ready to be picked up on schedule.

**Initiative (origination & development)**           Rating: 3

Manager's Comments:

Always seeking additional knowledge pertaining to the job is a plus for the department

**Customer Service**           Rating: 4

Manager's Comments:

There hasn't been any complaints on your mail route looks good for the department.

**UTA-0311**

UNIVERSITY OF
TEXAS
ARLINGTON

Human Resources

Performance Management
Employee Evaluation: Staff

Form 3-81
1/5/2018
Page 3 of 7



**Employee ID:**      **Review Period:** Jan-Dec {previous year}      **Review Date:**

**Special Projects**         Rating: [ ]

Manager's Comments:

Overall Average Rating: (HIGH) 5 4 3 2 1 (LOW) [ 3 ]

## Job Performance Definitions:

| Job Knowledge | Quality of Work | Quantity of Work | Responsibility and Dependability | Attendance and Punctuality |
|---|---|---|---|---|
| Knowledge of duties and responsibilities of the position. | Accuracy and thoroughness in the completion of work duties. | Accommodates to multiple demands for commitment of time, energy and resources. | Willingness to take ownership of assignments and be held accountable. | Adherence to established work hours. |

| Collaboration/Teamwork | Effective Use of Time | Initiative | Customer Service | Special Project(s) |
|---|---|---|---|---|
| Demonstrates mutual respect for all members of our community through communication and cooperation with fellow employees; actively works together to improve and enhance team performance and accomplish university goals. | Ability to organize and prioritize work assignments for optimum results. | Integrates change, proactively suggests improvements to work area processes, and champions new ideas. | Consistently demonstrates professional attitude and resolves customer's issues efficiently. | List specific project(s) in the space below that were assigned for this review period. This section may not apply to all employees. |

## EVALUATION RATING CHART

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| **Outstanding** | **Above Expectations** | **Solid Performer** | **Improvement Needed** | **Unsatisfactory** |
| An employee rated in this category consistently goes **well above and beyond job expectations.** Consistently exhibits strong initiative when accomplishing tasks, with values and work behaviors that consistently surpass expectations. This employee demonstrates leadership qualities with sustained excellent performance throughout the entire year. | An employee rated in this category **consistently fulfills performance** expectations and frequently exceeds them. Demonstrates performance at a very high level of quality, significantly contributes to the success of the services and projects they support and consistently generates valuable results above those expected of the position. Is recognized as a top performer. | An employee rated in this category is a strong solid performer whose performance **most often meets the** requirements of the job. Occasionally, this employee may exceed expectations of the job. | An employee rated in this category has performance which **leaves room for improvement.** While this employee may meet expectations some of the time, the employee fails to meet many of the significantly important requirements of the job or the goals established for the year. | An employee rated in this category has consistent **work performance results that are unsatisfactory and below the basic requirements** and expectations of the position. Failure to demonstrate significant improvement requires immediate review and corrective action to address performance and/or behavioral deficiencies. Possible separation of employment may be required. |



UNIVERSITY OF
TEXAS
ARLINGTON

Human Resources

**Performance Management**
**Employee Evaluation: Staff**

Form 3-81
1/5/2018
Page 6 of 7

**Employee ID:**        **Review Period:**  Jan-Dec (previous year)      **Review Date:**

Performance Strengths:

Delivering of Campus and USPS mail in a timely manner.
Sorting and delivering all types of mail.
Learning more about the Neopost equipment.

Areas of Improvement:

Learn the other Neopost machines.
Continue to help Property Management.

EMPLOYEE COMMENTS: Enter any comments you wish to make about your appraisal.

UTA-0313



UNIVERSITY OF
**TEXAS**
ARLINGTON

Human Resources

**Performance Management**
**Employee Evaluation: Staff**

Form 3-81
1/5/2018
Page 7 of 7

**Employee ID:** _____ **Review Period:** Jan-Dec (previous year) _____ **Review Date:** _____

SIGNATURES

Manager's Signature ⟨ _~Peyes Egus~_ ⟩ _____ Date **3/8/19**

Administrative Review _____ Date **3-8-19**

Employee Signature ⟨ _James McMerchant_ ⟩ _____ Date **3-8-19**

(My signature above indicates I have reviewed this performance appraisal and have discussed the contents with my immediate supervisor or his/her designee. My signature also means that I have been advised of my performance and does not necessarily imply that I agree with the evaluation.)

You may be entitled to know what information the University of Texas at Arlington collects concerning you. You may review and have UT Arlington correct this information according to procedures set forth in UT System Administration UTS139. The law is found in section 552.021, 552.023 and 559.004 of the Texas Government Code.

**NOTE TO THE EMPLOYEE:** The employee can, within 5 business days, supply the Manager his/her additional written comments with a copy to Human Resources to be attached to the personnel file copy of this summary page

**DISTRIBUTION:** Email an electronic copy of the signed document, single sided only one per employee to hrperformreviews@uta.edu. Do not bundle multiple evaluations in a single file. Provide a completed copy to your Administrative Unit and your employee.

FORM IS STRICTLY PROHIBITED

**UTA-0314**

# UNIVERSITY OF TEXAS ARLINGTON



**Human Resources**

**Performance Management**
**Employee Evaluation: Staff**

**Employee ID:** 6001142303

**Review Period:** Jan-Dec (previous year)    **Review Date:** 4-13-2020

**Employee Name:** James McMerchant

**Position Title:** Warehouse Worker II

**Manager:** James Edgerson

**Department:** Mail Services

**Review Type:**

New Employee _____ 3 Months

New Employee _____ 6 Months    Annual ___X___

IMPORTANT: Review the performance definitions and the evaluation below as you fill out this form.

RESULTS: Evaluate the employee's performance utilizing the factors below.

**Job Knowledge**    Rating: [4]

**Manager's Comments:**

James has shown alot of progress within the mailroom by learning the Neopost systems. And the everyday mail procedures.

**Quality of Work**    Rating: [4]

**Manager's Comments:**

James completes his job duties in a timely manner and always takes time to help other coworkers with questions and other job duties.

**Quantity of Work**    Rating: [4]

**Manager's Comments:**

James always meets or exceeds the productivity requirements

**Responsibility and Dependability**    Rating: [4]

**Manager's Comments:**

James is extremely reliable and needs little to no supervision.

MODIFICATION TO THIS FORM IS STRICTLY PROHIBITED.

UTA-0315



# UNIVERSITY OF TEXAS ARLINGTON

## Human Resources

### Performance Management
### Employee Evaluation: Staff

MODIFICATION TO THIS FORM IS STRICTLY PROHIBITED.

**Employee ID:** _____  **Review Period:** Jan-Dec (previous year)  **Review Date:** _____

**Attendance & Punctuality**  Rating: 4

Manager's Comments:

James arrives early and starts working as soon as the mail arrives. Consistently arrives to work on time.

**Collaboration/Teamwork**  Rating: 4

Manager's Comments:

James willingness to help other coworkers do whatever it takes to get the job done is an asset to what we are trying to do in the mailroom and Property Mgmt.

**Effective Use of Time**  Rating: 4

Manager's Comments:

James does a wonderful job of handling tasks in changing situations.

**Initiative (origination & development)**  Rating: 4

Manager's Comments:

James always looks for ways to assist other coworkers in his department and continue to check with Property Mgmt. to see if you can help them in anyway.

**Customer Service**  Rating: 4

Manager's Comments:

James has never had a complaint on your route, and you always show your professionlism towards the departments you deliver too.

UTA-0316

UTA-0342

SALARY HISTORY FOR JAMES McMERCHANT, DEREK GIERALT & LEWIS TOLLIVER
Created: 2-14-2023

**Employee Name:** McMerchant, James  
**Employee ID:** 6001142303

| Date | Action | Reason | Job Title | Amount | $ Incr | % Incr |
|---|---|---|---|---|---|---|
| 06/23/2015 | Hire | | Warehouse Worker III | $25,788.00 | | |
| 09/01/2016 | Pay Rate Change | Merit | Warehouse Worker III | $26,561.64 | $773.64 | 3.00% |
| 09/01/2018 | Pay Rate Change | Merit | Warehouse Worker III | $27,628.00 | $1,066.36 | 4.01% |
| 09/01/2019 | Pay Rate Change | Merit | Warehouse Worker III | $28,428.00 | $800.00 | 2.90% |
| 09/01/2020 | Pay Rate Change | Reclassification | Mail Clerk II | $30,000.00 | $1,572.00 | 5.53% |
| 09/01/2021 | Pay Rate Change | Merit | Mail Clerk II | $30,450.00 | $450.00 | 1.50% |
| 09/01/2022 | Pay Rate Change | Merit | Mail Clerk II | $31,059.00 | $609.00 | 2.00% |
| 01/01/2023 | Pay Rate Change | Market Adjustment | Mail Clerk II | $31,579.00 | $520.00 | 1.67% |

**Employee Name:** Gieralt, Derek  
**Employee ID:** 6001201271

| Date | Action | Reason | Job Title | Amount | $ Incr | % Incr |
|---|---|---|---|---|---|---|
| 07/05/2016 | Hire | | Warehouse Worker III | $25,788.00 | | |
| 09/11/2017 | Transfer | Transfer within Institution | Coordinator I, Special Programs | $32,000.00 | $6,212.00 | 24.09% |
| 09/01/2018 | Pay Rate Change | Merit | Coordinator I, Special Programs | $32,880.00 | $880.00 | 2.50% |
| 09/01/2019 | Pay Rate Change | Merit | Coordinator I, Special Programs | $34,092.00 | $1,292.00 | 3.94% |
| 09/01/2021 | Pay Rate Change | Merit | Coordinator I, Special Programs | $34,603.00 | $511.00 | 1.50% |
| 06/01/2022 | Position Change | Re-organization/Restructure | Distribution Specialist | $34,603.00 | $0.00 | 0.00% |
| 09/01/2022 | Pay Rate Change | Merit | Distribution Specialist | $35,295.06 | $692.06 | 2.00% |
| 01/01/2023 | Pay Rate Change | Market Adjustment | Distribution Specialist | $35,795.06 | $500.00 | 1.42% |

EXHIBIT D

| From: | Welch, Jason Lee |
|---|---|
| To: | Cavazos, Erin Lynn; Sandoval, Deborah K |
| Subject: | RE: Reclassification |
| Date: | Tuesday, September 22, 2020 3:32:00 PM |
| Attachments: | image003.png |
| | image004.png |
| | image005.png |
| | Mail Clerk II %.docx |

Take Two.

Jason Welch

Assistant Director
Property Management\Mail Services
The University of Texas at Arlington
Box 19536
1225 W. Mitchell   Room 118
Arlington, TX 76019

**Team** 817-272-3276
**Direct** 817-272-7101

jason.welch@uta.edu



**From:** Cavazos, Erin Lynn <ecavazos@uta.edu>
**Sent:** Tuesday, September 22, 2020 3:03 PM
**To:** Welch, Jason Lee <jason.welch@uta.edu>; Sandoval, Deborah K <sandoval@uta.edu>
**Subject:** Re: Reclassification

Perfect for me.  I have everything now.  I'll send it to Ehren.

Thanks for the assistance
Erin

**From:** "Welch, Jason Lee" <jason.welch@uta.edu>
**Date:** Tuesday, September 22, 2020 at 3:01 PM
**To:** "Sandoval, Deborah K" <sandoval@uta.edu>
**Cc:** "Cavazos, Erin Lynn" <ecavazos@uta.edu>
**Subject:** RE: Reclassification

**UTA-0242**

**EXHIBIT E**

Let me know what you guys think.


Thanks


Jason Welch
Assistant Director
Property Management\Mail Services
The University of Texas at Arlington
Box 19536
1225 W. Mitchell    Room 118
Arlington, TX 76019

**Team** 817-272-3276
**Direct** 817-272-7101

jason.welch@uta.edu



**From:** Sandoval, Deborah K <sandoval@uta.edu>
**Sent:** Monday, September 21, 2020 3:57 PM
**To:** Welch, Jason Lee <jason.welch@uta.edu>
**Cc:** Cavazos, Erin Lynn <ecavazos@uta.edu>
**Subject:** FW: Reclassification

Jason,

Please review and provide the percentage breakdowns for the Mail Carrier II.  We can go through it together if you'd like.

Thanks,
Debbie

**From:** Cavazos, Erin Lynn <ecavazos@uta.edu>

**UTA-0243**

**Sent:** Monday, September 21, 2020 2:57 PM
**To:** Sandoval, Deborah K <sandoval@uta.edu>
**Subject:** Re: Reclassification

Please see the attached job descriptions. These are the current ones I have on file. Please take a moment to be sure they are accurate with the positions. I also need the % breakdown for the Mail Clerk II.

Thanks
Erin

---

**From:** "Sandoval, Deborah K" <sandoval@uta.edu>
**Date:** Monday, September 21, 2020 at 1:53 PM
**To:** "Cavazos, Erin Lynn" <ecavazos@uta.edu>
**Subject:** RE: Reclassification

Thanks, Erin.

**From:** Cavazos, Erin Lynn <ecavazos@uta.edu>
**Sent:** Monday, September 21, 2020 1:27 PM
**To:** Sandoval, Deborah K <sandoval@uta.edu>; Welch, Jason Lee <jason.welch@uta.edu>
**Subject:** Re: Reclassification

We've chatted. It's all good. I'll have everything tomorrow to Ehren.

Thanks
Erin

---

**From:** "Sandoval, Deborah K" <sandoval@uta.edu>
**Date:** Monday, September 21, 2020 at 1:26 PM
**To:** "Cavazos, Erin Lynn" <ecavazos@uta.edu>, "Welch, Jason Lee" <jason.welch@uta.edu>
**Subject:** RE: Reclassification

Jason contacted Mary and told her we'd like to proceed with a reclassification to Mail Carrier II with a salary of $30,000. He spoke to
Donna Boyd in compensation. Can you update Erin on that, Jason? We could do a quick chat if you'd like.

Thanks,
Debbie

**UTA-0244**

**From:** Cavazos, Erin Lynn <ecavazos@uta.edu>
**Sent:** Monday, September 21, 2020 11:39 AM
**To:** Welch, Jason Lee <jason.welch@uta.edu>; Sandoval, Deborah K <sandoval@uta.edu>
**Subject:** Re: Reclassification

Morning,

How is this going?  Have you had a chance to discuss everything and determine what we will be doing?

Thanks
Erin

---

**From:** "Welch, Jason Lee" <jason.welch@uta.edu>
**Date:** Thursday, September 17, 2020 at 9:32 AM
**To:** "Sandoval, Deborah K" <sandoval@uta.edu>
**Cc:** "Cavazos, Erin Lynn" <ecavazos@uta.edu>
**Subject:** RE: Reclassification

Debbie,


   I think everything looks great. I did have an opportunity to speak with Donna in HR yesterday and want to meet with you first before we proceed.


Anytime is good for me today.


Thanks


Jason Welch
Assistant Director
Property Management\Mail Services
The University of Texas at Arlington
Box 19536
1225 W. Mitchell    Room 118
Arlington, TX 76019

**UTA-0245**

**Team** 817-272-3276
**Direct** 817-272-7101

jason.welch@uta.edu



**From:** Sandoval, Deborah K <sandoval@uta.edu>
**Sent:** Tuesday, September 15, 2020 5:15 PM
**To:** Welch, Jason Lee <jason.welch@uta.edu>
**Cc:** Cavazos, Erin Lynn <ecavazos@uta.edu>
**Subject:** RE: Reclassification

Jason,

I filled it in with some of my previous bullets. Please make any changes necessary.

Thanks,
Debbie

**From:** Cavazos, Erin Lynn <ecavazos@uta.edu>
**Sent:** Tuesday, September 15, 2020 1:32 PM
**To:** Sandoval, Deborah K <sandoval@uta.edu>; Welch, Jason Lee <jason.welch@uta.edu>
**Cc:** Wixson, Ehren <ewixson@uta.edu>
**Subject:** Reclassification

Good Afternoon,

As I go forward with getting James reclassified, I'm going to need your help with page three of the document I've attached. Can you both take a look and fill in the three sections?

Thanks for the help

Erin


Erin Cavazos
Coordinator III
Business Services
817-272-0583

**UTA-0246**

A.    I don't think this; I know this.

Q.    **How do you know that?**

A.    Because it's right there in black and white.

Q.    **Where is it right there in black and white?**

A.    It's -- again, if I had knew I needed to have all this in front of me, I would have brought that with me.  I can prove this.

Q.    **Okay.  Just a moment.**

      **Okay.  I'll have you look at what I'm going to be marking as Defendant's Exhibit 1.**

          MS. QUIMBY:  Ali, I have a copy for you.

          (Exhibit 1 marked.)

Q.    **Does this look familiar?**

A.    Yes.

Q.    **What is this?**

A.    Excuse me?

Q.    **What is this?**

      **You said it looked familiar.  How do you recognize it?**

A.    Because I gave her copies of this.

Q.    **Okay.  What is it?**

A.    It says, Property Management.

**EXHIBIT F**

Q.   Okay.  And --

A.   Employee.

Q.   Is Derek Gieralt listed there?

A.   Yes.

Q.   And is he -- what is he listed as?

A.   Mail Carrier II.

Q.   Is this what you're talking about that --

A.   That's what I'm talking about.

Q.   Okay.  And, I guess, so where is this information coming from?

A.   I got it off the computer.

Q.   Do you remember from what website?

A.   UTA website.  I can -- that's the only thing I can tell you, it's UTA's website.

Q.   Okay.  And do you remember the date?

A.   No.  That's what I meant.

Q.   Do you have any idea ballpark of the day?

A.   It was probably in 2019.

Q.   Okay.  Looks like it may be cut off a little bit up there in the top left corner, but it appears to say 2020 at least.

A.   Yeah.

Q.   Would it make sense that you looked at this in 2020?

A.   That's kind of -- it's been a minute,

salary associated with the mail carrier position?

A. Well, I can't say that per se, but I know that's exactly what he got.

Q. Okay. Okay. And you know that because that's what his job classification was, mail carrier?

A. Yes, ma'am.

Q. And you saw that on the Internet?

A. Basically he told me.

Q. Okay. So he told you.

A. Yeah.

Q. But he was working at the warehouse?

A. At the warehouse.

Q. Okay. And you don't know exactly what he was doing at the warehouse?

A. He was doing -- everything I described at the beginning of this conversation that we did in the warehouse, that's what he was doing.

Q. Okay. Did he tell you that?

A. Ma'am, he didn't have to tell me that. I know this because I -- the warehouse -- central receiving is just like walking out that door and going right across the walkway there.

Q. So you knew he was working in the warehouse, and so you knew that that's the job he

# Contact Property Management

*1225 W. Mitchell Street (Map)*
*Box 19536 Arlington TX 76019-0130*

*UT Arlington departmental requests for moving services and crates, surplus item pick-up, document destruction, table/chair setup, and inquiries or requests related to inventory property should be sent to: property_mgmt@uta.edu.*

*P: (817) 272-2191*

*F: (817) 272-5220*

## PROPERTY MANAGEMENT EMPLOYEES

**Jason Welch**

ASSISTANT DIRECTOR

P: 817-272-7101

email

**Charlie Russell**

Warehouse Worker III

P: 817-272-5650

email

**Gleen Boyett**

Manager

P: 817-272-9657

email

**Derek Gieralt**

Mail Clerk II (Route 4)

P: 817-272-2794

email

# EXHIBIT G

**James McMerchant**

**Mail Clerk II (Route 5)**

P: 817-272-2794

email

**Elizabeth Clark**

Helper

**Amelia Miles**

**Customer Service Rep. (UC Mailroom)**

P: 817-272-2392

email

**Elizabeth Clark**

Helper

**Business Affairs and Controller**
219 West Main Street · Arlington, TX 76019
Contact Us

---

© 2020 The University of Texas at Arlington
701 S. Nedderman Drive • Arlington, TX 76019 • 817-272-2011

Careers | Contact Us | Emergency Preparedness | Site Policies | Legal and Privacy Notice
Nondiscrimination and Title IX | Mental Health Resources | Report Sexual Misconduct
Institutional Resume | UT System | State of Texas | Statewide Search | Homeland Security | Report Fraud

| | | |
|---|---|---|
| JAMES MCMERCHANT, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | TARRANT COUNTY, TEXAS |
| UNIVERSITY OF TEXAS AT | § | |
| ARLINGTON. | § | |
| | § | |
| *Defendant.* | § | 236TH JUDICIAL DISTRICT |

## DECLARATION OF JASON WELCH
### (Civil Practice and Remedies Code, Chapter 132)

1. My name is Jason Welch and I am over eighteen (18) years of age, of sound mind, and fully capable of making this statement. The facts stated in this declaration are within my personal knowledge and are true and correct.

2. I am an Assistant Director in the University of Texas at Arlington's Distribution Services under the umbrella of the Business Services Division. Distribution Services includes both the Property Management/Central Receiving and Mail Services departments. I have been in this position since June of 2017. Prior to my role as Assistant Director, I served as a Manager and Spot Auditor for what is now called Distribution Services since December of 2014.

3. The job of Warehouse Worker[1] is included in the Property Management department. Warehouse Workers are responsible for event setup, office moves on campus, surplus pickups, shredding pickups, delivering packages as well as moving freight on campus. Mail Carriers sort and deliver letter mail and packages across campus, and process outgoing mail. See Exhibit A – Warehouse Worker III Job Description, Exhibit F – Mail Clerk II Job Description.

4. Warehouse Worker and Mail Carrier duties are similar, and both require delivering things across campus, be it freight or mail. Warehouse Workers and Mail Carriers are often cross trained so that an individual serving in either role is able to deliver both freight and mail if needed. The pay for Warehouse Worker and Mail Carrier position is similar, with the Warehouse Worker salary being slightly higher than the Mail Carrier salary.

5. James McMerchant was hired as a Warehouse Worker III on June 23, 2015. His starting salary was $25,788.00. Although not his direct supervisor, I serve in a supervisory capacity to Mr. McMerchant. See Exhibit B – McMerchant, Gieralt, Lewis Salary History.

6. In 2016 Mr. McMerchant was cross-trained and performed Mail Carrier duties in addition

---

[1] The position of "Warehouse Worker" is now called "Distribution Specialist." The reference to the position of Warehouse Worker throughout this declaration refers to the Warehouse Worker position in 2017-2020.

1

**APPX. 028**

## EXHIBIT H

to his duties as a Warehouse Worker under the Direction of the Previous Assistant Director.

7. In June of 2016, Derek Gieralt was hired as a Warehouse Worker III. His starting salary was $25,788.00. As is custom in the Business Services, he filled in as a Mail Carrier II but never held that title. See Exhibit C – Gieralt Hiring.

8. In 2017, a "Coordinator I" position was posted internally and externally. Mr. Gieralt applied for the position and was hired. The position was a "promotion" from his previous position as Warehouse Worker and his salary increased to $32,000. See Exhibit B – McMerchant, Gieralt, Lewis Salary History. The duties of the position included "typical" warehouse duties such as doing freight deliveries, with additional computer work such as emails and data input.

9. On or about 2017, Mr. McMerchant refused to do Warehouse Worker duties and solely worked as a Mail Carrier. Mr. McMerchant was not reclassified to a Mail Carrier because the intent was to continue cross-training and also because there was not available budget for an additional position in Mail Services at that time.

10. In January of 2020, Mail Carrier employee C.W. Gayle officially retired which theoretically opened up a Mail Carrier position within the State Funded budget of Mail Services. Shortly before the COVID-19 pandemic began, Mr. McMerchant asked me for a title change and a possible raise. I was unable to give him a raise at the time because at the onset of the pandemic, UTA instituted a hiring, reclassification, and promotion freeze. Once the freeze was lifted, I requested that Mr. McMerchant be given a title change to Mail Carrier II. Human Resources was tasked with a Compensation Analysis for a Warehouse Worker III and a Mail Carrier II. It was determined at that time that the Mail Carrier II has a slightly less Salary Average than the Warehouse Worker III position. Human Resources gave me the responsibility of determining if he was to be granted a raise or not.

11. The raise was not a function of Mr. McMerchant's title change from Warehouse Worker to Mail Carrier. Rather, the raise reflected that Mr. McMerchant had taken on some additional stops on his route when former Mail Carrier, C.W. Gayle, retired at the beginning of 2020. Exhibit D – McMerchant Raise.

12. Also in 2020, there was an error on UTA's Property Management department web page, which listed Mr. McMerchant and Mr. Gieralt as a Mail Carriers. Exhibit E – UTA website error.

My name is Jason Welch, and I am executing this declaration as part of my duties and responsibilities for The University of Texas at Arlington as an Assistant Director. I declare under penalty of perjury that all the information stated in this Declaration is true and correct.

Executed in Tarrant County, State of Texas, on 23rd February, 2024.

Jason Welch

2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Micala Munoz on behalf of Ali Crocker
Bar No. 24098868
micala@cralawfirm.com
Envelope ID: 86625121
Filing Code Description: No Fee Documents
Filing Description: Plaintiff's Response to Defendant's Plea to the Jurisdiction and Traditional and No Evidence Summary Judgment
Status as of 4/15/2024 8:44 AM CST

Associated Case Party: THEUNIVERSITY OF TEXAS AT ARLINGTON

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Laura Hendrix | | laura.hendrix@oag.texas.gov | 4/12/2024 5:48:20 PM | SENT |
| Mary Quimby | | mary.quimby@oag.texas.gov | 4/12/2024 5:48:20 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Crocker | | ali@cralawfirm.com | 4/12/2024 5:48:20 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Annelis Rico on behalf of Ali Crocker
Bar No. 24098868
annelis@cralawfirm.com
Envelope ID: 103027545
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellee's Brief
Status as of 7/11/2025 12:30 PM CST

Associated Case Party: University of Texas at Arlington

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| karel macias | | karel.macias@oag.texas.gov | 7/11/2025 12:16:09 PM | SENT |
| Brianna Krominga | | brianna.krominga@oag.texas.gov | 7/11/2025 12:16:09 PM | SENT |

Associated Case Party: JAMES MCMERCHANT

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ali Crocker | 24098868 | ali@cralawfirm.com | 7/11/2025 12:16:09 PM | SENT |
| Annelis Rico | | annelis@cralawfirm.com | 7/11/2025 12:16:09 PM | SENT |